**Harold S. HEMSTREET,**
**Plaintiff–Appellant,**

v.

**COMPUTER ENTRY SYSTEMS**
**CORPORATION, Defendant–**
**Appellee.**

No. 90–1436.

United States Court of Appeals,
Federal Circuit.

Aug. 12, 1992.

Rehearing Denied; Suggestion for
Rehearing In Banc Declined
Sept. 29, 1992.

James M. Wetzel, James M. Wetzel, P.C., associated with Burditt, Bowles & Radzius, Chtd., and Edward D. Manzo, Cook, Egan, McFarron & Manzo, Ltd., of Chicago, Ill.

Thomas L. Crisman, Johnson & Gibbs, P.C., Dallas, Tex., argued, for defendant-appellee. With him on the brief were Gaynell C. Methvin and James D. Petruzzi.

Before MICHEL, Circuit Judge, SMITH, Senior Circuit Judge, and PLAGER, Circuit Judge.

PLAGER, Circuit Judge.

Appellant Harold S. Hemstreet (Hemstreet) appeals the order of the District Court for the Northern District of Illinois entering summary judgment in favor of defendant Computer Entry Systems Corp. (CES). *Hemstreet v. Computer Entry Systems Corp.*, 741 F.Supp. 1308, 16 USPQ2d 1204 (N.D.Ill.1990). The trial court held that Hemstreet was barred by the doctrine of laches from asserting claims for patent infringement which arose prior to the filing of suit on August 3, 1989. The trial court further held that Hemstreet was barred by the doctrine of equitable estoppel from pursuing damages that arose after the suit was filed. We reverse the order granting summary judgment, vacate the judgment for CES, and remand with instructions.

## BACKGROUND

In 1953, Hemstreet filed a patent application relating to the field of Optical Character Readers (OCRs). After some twenty years of effort at the Patent and Trademark Office (PTO), followed by a suit in state court to recover ownership of the patents from his employer's successor, Hemstreet in 1976 emerged the owner of two issued patents—the 3,713,099 patent ('099) and the 3,713,100 patent ('100).

Hemstreet—an individual inventor—then set out to enforce his patent rights. He first sought to license IBM, and reached agreement with the company on August 22, 1978. Concurrently, he initiated litigation against Spiegel Corporation and Recognition Equipment, Inc. (REI) in September

Leonard M. Ring, Leonard M. Ring & Associates, Chicago, Ill., argued, for plaintiff-appellant. With him on the brief were

1977. That case settled during trial, on July 13, 1981. On November 17, 1981, Hemstreet filed suit against Burroughs Corporation. Burroughs later instigated a reexamination proceeding at the PTO on July 3, 1986. On January 30, 1987, the *Burroughs* trial court granted Burroughs' motion for summary judgment; this was reversed by the Federal Circuit on September 9, 1988. On August 1, 1989, the Examiner issued an Office Action confirming patentability of over 30 claims of the '100 patent. Hemstreet promptly filed suit against CES on August 3, 1989, shortly before the Burroughs litigation was settled.[1]

While Hemstreet was pursuing his enforcement strategy as described, he had also sent a warning letter to other members of the OCR industry. Amer–O–Matic, a subsidiary which CES had acquired in September 1982, received such a letter on July 1, 1983. The text of that letter is set out in the District Court opinion. *Hemstreet v. Computer Entry Systems Corp.*, 741 F.Supp. at 1310, 16 USPQ2d at 1206. We note specifically that the letter (1) offered to negotiate a license; (2) mentioned other litigation and licensees, thereby implying a sequential license-or-litigate strategy; (3) provided information about the pending lawsuit with Burroughs; and (4) requested that CES contact Hemstreet after studying the patents (copies of which were attached). The letter did not threaten immediate litigation, nor did it provide any deadline for response.

CES' October 4, 1983 response to the July 1 letter to Amer–O–Matic indicated that it would examine the Hemstreet patents, and promised to inform Hemstreet of its findings. CES also requested and was provided with further information about licensing, including confidential copies of the IBM and REI licenses. Although CES promised a prompt response to Hemstreet, it did not provide one.

Hemstreet and CES did not communicate again until Hemstreet in 1989 contacted CES with a proposed tolling agreement. CES maintained its silence. As noted, litigation was not long in following. On June 22, 1990, the trial court granted CES' motion for summary judgment on the laches and estoppel issues, thus holding that Hemstreet was completely barred from any recovery for CES' alleged infringement. Hemstreet appeals.

## DISCUSSION

 Laches and estoppel are equitable defenses, committed to the sound discretion of the trial court. *A.C. Aukerman Co. v. R.L. Chaides Construction Co.*, 960 F.2d 1020, 1028, 22 USPQ2d 1321, 1325 (Fed.Cir. 1992). Both defenses ultimately turn on underlying factual determinations. 960 F.2d at 1037–38 and 1041, 22 USPQ2d at 1332–33 and 1335. Summary judgment thus is appropriate only when there is no genuine issue of material fact *and* when the movant is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *Winner Int'l Corp. v. Wolo Mfg. Corp.*, 905 F.2d 375, 376, 15 USPQ2d 1076, 1077 (Fed.Cir.1990). This of course presumes that judgment has been rendered under the appropriate legal standard. *See, e.g., Aukerman*, 960 F.2d at 1039, 22 USPQ2d at 1333–34 ("If the decision of laches is to be made on summary judgment, there must ... be no genuine issue of material fact, the burden of proof of an issue must be correctly allocated, and all pertinent factors must be considered." (citation omitted)) *and Wang Lab. v. Applied Computer Sciences*, 958 F.2d 355, 359, 22 USPQ2d 1055, 1058 (Fed.Cir. 1992) (no genuine issue of material fact, but trial court erred as a matter of law in concluding that the parties were bound by the draft settlement agreement at issue).

---

1. The trial court stated that the Burroughs litigation finally concluded on September 9, 1988, the day the Federal Circuit reversed the lower court's summary judgment in Burroughs' favor. However, the litigation did not actually terminate until the two parties settled, September 20, 1989.

I

The trial court did not have the benefit of our recent clarification of the law of laches in *A.C. Aukerman Co. v. R.L. Chaides Construction Co.*, 960 F.2d 1020, 22 USPQ2d 1321 (Fed.Cir.1992). Nor did the trial court then have before it the instructive work of *Meyers v. Brooks Shoe, Inc.*, 912 F.2d 1459, 16 USPQ2d 1055 (Fed. Cir.1990), and *Vaupel Textilmaschinen KG v. Meccanica Euro Italia, S.P.A.*, 944 F.2d 870, 20 USPQ2d 1045 (Fed.Cir.1991).

The trial court's analysis is inconsistent with the approach to laches set forth in *Aukerman*, and illustrates graphically why fairness requires that the principles laid out in *Aukerman* be followed. The trial court acted in accordance with its understanding of our prior precedents. In light of the more than six year delay, the court placed the burden of proof on the patentholder to show the delay to be excusable and to affirmatively prove the lack of prejudice to the defendant.

*Aukerman* specifically rejects this approach. 960 F.2d at 1038–39, 22 USPQ2d at 1333. Instead, the presumption of laches which arises after a defendant proves a six-year delay is a "double bursting bubble" which the plaintiff punctures with introduction of evidence sufficient to raise a genuine dispute as to *either* delay or prejudice. Here, Hemstreet introduced evidence that the delay was attributable to its litigation with Burroughs as well as the reexamination proceeding which Burroughs instigated some time after the notice letter had been sent to CES. This evidence was more than sufficient to raise a genuine dispute as to whether the delay was excusable. The bubble was burst; defendant was put to its proof on both factors. *Aukerman*, 960 F.2d at 1037–38, 22 USPQ2d at 1332.

With the presumption burst, *Aukerman* requires that a defendant who invokes laches as a defense must affirmatively prove (1) unreasonable and inexcusable delay and (2) prejudice resulting from that delay. 960 F.2d at 1032, 22 USPQ2d at 1328. Delay may be excused by a host of factors, including involvement in other litigation. 960 F.2d at 1033, 22 USPQ2d at 1329. It is true that prior precedent could be read to require explicit notice to the defendant of both the existence of the other proceedings and the patentee's intent to enforce its rights against the alleged infringer at the conclusion of other litigation.[2] *Aukerman* has clarified that this is far from a hard and fast requirement. Instead, *Aukerman* restores equitable flexibility: "The equities may or may not require that the plaintiff communicate its reasons for delay to the defendant." *Id.*

Here, we note that during the 1976–1989 period Hemstreet was busy enforcing his patent rights elsewhere, and indeed for a period of the delay had no valid patent rights to enforce, as the *Burroughs* trial court had erroneously held the patent unenforceable. On the facts of record before us, the delay involved here could not be considered unreasonable and inexcusable. However, the defendant during the proceedings below was not required to introduce evidence to support a finding of unreasonable and inexcusable delay—it was afforded the benefit of the pre-*Aukerman* presumption which shifted the burden of proof to Hemstreet. To the extent that CES rested on this presumption and did not introduce all the evidence available to prove its case, a remand is necessary to provide it with an opportunity to further develop the record.

Although the trial court recognized that prejudice resulting from the patentee's delay was also a necessary part of the laches defense, its opinion does not address that factor.[3] However, we note that the

---

**2.** *Jamesbury Corp. v. Litton Industrial Products,* 839 F.2d 1544, 1552–53, 5 USPQ2d 1779, 1786 (Fed.Cir.1988) (laches upheld for failure to notify the alleged infringer of intent to enforce); *Hottel Corp. v. Seaman Corp.,* 833 F.2d 1570, 1573, 4 USPQ2d 1939, 1941 (Fed.Cir.1987) (lach-

es upheld for failure to explicitly notify the alleged infringer of the other proceedings).

**3.** This absence of discussion may be due to the trial court's belief that the presumption of laches shifted the burden of persuasion regarding both delay and prejudice to the patentee. Un-

record reflects that CES had expenditures of over $23 million on research and development, $6.5 million on direct marketing costs, and $20 million to expand or consolidate manufacturing facilities. 741 F.Supp. at 1313, 16 USPQ2d at 1208. But these expenditures have no explicitly proven nexus to the patentee's delay in filing suit, as *Aukerman* requires for a finding of prejudice. It is not enough that the alleged infringer changed his position—i.e., invested in production of the allegedly infringing device. The change must be because of and as a result of the delay, not simply a business decision to capitalize on a market opportunity. *See Aukerman*, 960 F.2d at 1033, 22 USPQ2d at 1329. Further, we note that CES' prejudice argument is severely undercut by Hemstreet's provision of explicit notice of the *Burroughs* litigation and implicit suggestion that CES would soon face litigation if it refused to license. Presumably, CES itself read the letter in that light, since it promptly inquired about licensing arrangements.[4] These factors should be carefully examined by the trial court if the defendant chooses on remand to pursue a laches defense.

At the time of this case, the OCR industry was a specialized and largely self-contained industry. Hemstreet in his 1983 letter to CES gave specific warning of the litigation plaintiff was then pursuing against other alleged infringers. CES apparently made a deliberate business decision to ignore that warning, and to proceed as if nothing had occurred. If so, such a decision has to be at CES' risk, not Hemstreet's. Hemstreet's subsequent continued pursuit of his rights, in public forums both of his choosing and of the choosing of various of his opponents, left the attentive observer with little doubt of his intentions.

Indeed, if silence is the nub of defendant's claim that there was not only inexcusable delay but that the long silence before filing suit resulted in harm to defendant, on the facts of this record it hardly seems that there was silence.

## II

■ The trial court granted summary judgment in defendant's favor on estoppel, citing the four-part test set forth in *Jamesbury Corp. Inc. v. Litton Industrial Products*, 839 F.2d 1544, 1552–53, 5 USPQ2d 1779, 1786–87 (Fed.Cir.), *cert. denied*, 488 U.S. 828, 109 S.Ct. 80, 102 L.Ed.2d 57 (1988). This four-part test has now been expressly overruled. *Aukerman*, 960 F.2d at 1042, 22 USPQ2d at 1336 (replacing four-part *Jamesbury* test with three-part test consisting of (1) statements or conduct which communicate something in a misleading way; (2) reliance; and (3) material prejudice as a result of the reliance). However, three aspects of the law of estoppel remain unchanged by *Aukerman;* first, the requirement that there be *some* misleading conduct; second, the requirement that CES act in reliance upon that conduct; and third, that no presumption arises from the passage of time. *Compare Jamesbury*, 839 F.2d at 1553–54, 5 USPQ2d at 1786–88, *with Aukerman*, 960 F.2d at 1042–43, 22 USPQ2d at 1336–37.

As the summary of the facts of record recited above suggests, there was no *action* by plaintiff that would lead a reasonable competitor to assume that continued infringement by defendant was condoned or approved by plaintiff.[5] And there is a total absence in the record of any showing by CES that its activities were *in reliance upon* supposed actions of Hemstreet, rath-

---

der the trial court's approach, Hemstreet's failure to prove that the delay was neither unreasonable nor inexcusable ended the laches inquiry. As noted, this approach is incorrect under *Aukerman*.

4. This inference is further strengthened by Hemstreet's established sequential license-or-litigate pattern. *Compare Jamesbury Corp. v. Litton Industrial Products, Inc.*, 839 F.2d at 1553, 5 USPQ2d at 1786 (Fed.Cir.1988) (no prior license-or-litigate pattern).

5. *Compare Meyers v. Brooks Shoe, Inc.*, 912 F.2d at 1464, 16 USPQ2d at 1059 (a suggestion of infringement coupled with an offer to license followed by silence would not suffice to establish equitable estoppel) *with Aukerman*, 960 F.2d at 1043–44, 22 USPQ2d at 1337 (requiring a "clear duty to speak" or a "known acquiescence.").

er than a business judgment of its own—a judgment which subsequent events may well prove to have been faulty.[6]

Although defendant correctly notes that equitable estoppel may in some instances be based upon a misleading silence, mere silence must be accompanied by some *other* factor which indicates that the silence was sufficiently misleading as to amount to bad faith. *Hottel*, 833 F.2d at 1573–74, 4 USPQ2d at 1941; *Aukerman*, 960 F.2d at 1042, 22 USPQ2d at 1336. No such factor is present here. In 1983, when communication was terminated, license negotiations were underway. Since the parties were not in an adversarial stance, Hemstreet had less reason to be vigilant in pressuring CES for a response. In fact, as of the last communication in 1983, the onus was upon *CES* to communicate with Hemstreet, not the converse. Therefore, any "inaction" was CES'.

Our jurisprudence on the subject of estoppel is set forth in *Aukerman*. The trial court at the time this case was decided did not have the benefit of that review of the law, and its judgment based on earlier erroneous views cannot now stand.

## CONCLUSION

The order granting summary judgment is reversed, and the judgment of the trial court is vacated. On the facts of record in this case, it is difficult to imagine that, under the standards set out in *Aukerman*, the defense of laches can succeed. It is even less likely that the elements of estoppel exist. Nevertheless, out of an abundance of caution since all the facts may not be known, we remand the matter to the trial court for such further proceedings on these issues as may be appropriate.

Each party to bear its own costs.

ORDER REVERSED, JUDGMENT VACATED, AND REMANDED.

---

**6.** *See Meyers*, 912 F.2d at 1463, 16 USPQ2d at 1058 ("Conclusory averments [of business expansion] are not sufficient to show prejudice.").