**GASSER CHAIR COMPANY, INC., and George Gasser, Plaintiffs–Appellants,**

v.

**INFANTI CHAIR MANUFACTURING CORP., and Vittorio Infanti, Defendants–Appellees.**

No. 94–1282.

United States Court of Appeals, Federal Circuit.

June 1, 1995.

Charles P. Kennedy, Lerner, David, Littenberg, Krumholz & Mentlik, Westfield, NJ, argued for, plaintiffs-appellants. With him on the brief was Daniel H. Bobis.

Anthony J. Casella, Casella & Hespos, New York City, argued for, defendants-appellees. With him on the brief was Gerald E. Hespos.

Before RICH, MAYER, and MICHEL, Circuit Judges.

MAYER, Circuit Judge.

Gasser Chair Company, Inc. and George Gasser (Gasser) appeal a final judgment of the United States District Court for the Eastern District of New York, No. 88–CV–3931 (Mar. 24, 1994), granting summary judgment to Infanti Chair Manufacturing Corp. and Vittorio Infanti (Infanti) and holding that Gasser's patent and trade dress claims were barred by laches and equitable estoppel. Because we conclude that the district court did not properly apply the tests of laches and equitable estoppel to the facts, we reverse and remand.

*Background*

Gasser and Infanti are furniture manufacturers located in New York. Gasser holds United States Patent No. 4,106,739 ("the '739 patent"), issued August 15, 1978, entitled "Bumper Edge Member for Chairs." The bumper edge is a hollow structure applied to the edges of the structural portions of a chair to protect and finish it and to indicate where the welt and upholstery should be attached.

On January 9, 1979, Gasser sent Infanti a letter saying that Infanti was infringing the '739 patent and that legal action would ensue if Infanti did not respond. On March 19, 1979, the parties reached an agreement under which Infanti agreed to cease manufacturing and selling its allegedly infringing chairs.

Contrary to the terms of that agreement, in 1981 Infanti once again began to sell chairs with bumper edges. On April 19, 1982, Gasser sent Infanti a letter threatening legal action if Infanti did not cease making chairs with bumper edges. The letter was returned as undeliverable. Gasser sent a second letter on May 19, 1982, which Infanti did not answer. During the same time period, Dun & Bradstreet, Inc., conducted investigations of Infanti at Gasser's request, and reported that Infanti had ceased doing business.

In 1983, Gasser saw Infanti displaying chairs with bumper edges at a trade show in New York. Gasser warned Infanti that he would pursue legal action if Infanti continued to make the chairs. In 1986 and 1987, Gasser again saw Infanti displays at trade shows, and on both occasions threatened legal action. On February 16, 1988, Gasser told Infanti that it would not sue if Infanti sold its business to Gasser. The parties entered into negotiations but were unable to agree on a price for the business, and on December 20, 1988, Gasser sued Infanti for infringement of the '739 patent, violation of Gasser's trade-dress rights in the overall appearance of the chairs, under Lanham Act section 43(a) and common law unfair competition, and breach of the 1979 agreement. Infanti moved for summary judgment, claim-

ing laches and estoppel as defenses against the patent claim, functionality as a defense against the trade-dress claim, and the statute of limitations as a bar to the contract claim.

On August 19, 1991, the district court granted Infanti summary judgment on the grounds of laches and estoppel on the patent claim, and extended this holding to the trade-dress and contract claims *sua sponte.** Gasser moved for reconsideration, which was denied on April 16, 1992. Infanti's counterclaims for antitrust violations and unfair competition were dismissed with prejudice. On March 24, 1994, the district court entered final judgment on the grounds indicated, and this appeal followed.

## Discussion

A district court's grant of summary judgment is reviewed *de novo*. *See Meyers v. Asics Corp.*, 974 F.2d 1304, 1306, 24 USPQ2d 1036, 1037 (Fed.Cir.1992). "[T]here must ... be no genuine issues of material fact, the burden of proof of an issue must be correctly allocated, and all pertinent factors must be considered." *A.C. Aukerman Co. v. R.L. Chaides Constr. Co.*, 960 F.2d 1020, 1039, 22 USPQ2d 1321, 1333 (Fed.Cir.1992). This court must ensure that the district court "view[ed] the evidence in a light most favorable to the nonmovant and dr[e]w all reasonable inferences in its favor, ... and ... resolve[d] all doubt over factual issues in favor of the party opposing summary judgment." *SRI Int'l v. Matsushita Electric Corp.*, 775 F.2d 1107, 1116, 227 USPQ 577, 581 (Fed.Cir.1985) (citations omitted).

### A. *Laches as a Bar to the Patent Infringement Claim*

■ Laches is a long-recognized defense to a patent infringement suit that arises when a patent holder "neglect[s] or delay[s] ... bringing suit to remedy an alleged wrong, which taken together with lapse of time and other circumstances, causes prejudice to the adverse party and operates as an equitable bar." *Aukerman*, 960 F.2d at 1028–29, 22 USPQ2d at 1325. Laches "focuses on the dilatory conduct of the patentee and the prejudice which the patentee's delay

has caused." *Id.* at 1031–32, 22 USPQ2d at 1328. If successful, the laches defense bars relief only for damages accrued prior to suit. *See id.* at 1040–41, 22 USPQ2d at 1334–35.

■ To successfully invoke laches, a defendant must prove by a preponderance of the evidence (1) that the plaintiff delayed filing suit an unreasonable and inexcusable length of time after the plaintiff knew or reasonably should have known of its claim against the defendant; and (2) the delay resulted in material prejudice or injury to the defendant. *See Advanced Cardiovascular Sys., Inc. v. SciMed Life Sys., Inc.*, 988 F.2d 1157, 1161, 26 USPQ2d 1038, 1041 (Fed.Cir. 1993); *Aukerman*, 960 F.2d at 1028, 22 USPQ2d at 1324; *Meyers v. Brooks Shoe Inc.*, 912 F.2d 1459, 1461, 16 USPQ2d 1055, 1057 (Fed.Cir.1990), *overruled on other grounds by Aukerman*, 960 F.2d at 1038–39, 22 USPQ2d at 1333. On summary judgment, Infanti also had to establish that there was no genuine issue of material fact as to either element.

■ Even if the elements of laches are established, however, a court need not bar a plaintiff's suit. The application of the laches defense is discretionary, and as an equitable matter, the district court is to look to all the facts and circumstances of the case and weigh the equities of the parties. *See, e.g., Aukerman*, 960 F.2d at 1032, 22 USPQ2d at 1328. "Laches is not *established* by undue delay and prejudice. Those factors merely lay the foundation for the trial court's exercise of discretion. Where there is evidence of other factors which would make it inequitable to recognize the defense despite undue delay and prejudice, the defense may be denied." *Id.* at 1036, 22 USPQ2d at 1331.

■ The first factor, the length of time that is unreasonable or inexcusable delay in filing suit, depends on the facts and circumstances of each case. *See Galliher v. Cadwell*, 145 U.S. 368, 373, 12 S.Ct. 873, 875, 36 L.Ed. 738 (1892); *Aukerman*, 960 F.2d at 1032, 22 USPQ2d at 1328; *Meyers v. Brooks Shoe*, 912 F.2d at 1462–63, 16 USPQ2d at 1058. The focus is on reasonableness. *See*

---

* Gasser does not appeal the dismissal of its con-   tract claim.

*Aukerman,* 960 F.2d at 1034, 22 USPQ2d at 1329. A court must consider any excuse for the delay offered by the plaintiff. *See id.* at 1033, 22 USPQ2d at 1329 (listing examples).

█ The district court concluded that Gasser delayed for five years before bringing suit: from 1983, when Gasser learned of Infanti's continued infringement at a trade show, to February 16, 1988, when the parties began negotiating a possible settlement. The court observed that Gasser had seen Infanti's chairs on display at trade shows in 1983, 1986, and 1987, and that Infanti had not attempted to conceal its post–1983 chair manufacturing from Gasser. The court concluded that Gasser's sole excuse for the delay was that litigation was not his "personal style," and that the five year delay was therefore inexcusable.

We believe the district court erred in not drawing reasonable inferences in favor of Gasser that would have shortened the delay period and may have shown that the delay was reasonable. For example, Gasser testified that he believed Infanti would again abide by the 1979 agreement following their encounter at the 1983 trade show. Gasser also testified that he did not see Infanti chairs with bumper edges again after that trade show until 1986. Infanti, on the other hand, denied that the 1983 encounter even took place. Nevertheless, the district court treated the 1983 trade show encounter as the starting date for calculating Gasser's delay in filing suit. Thus, although the court credited Gasser's testimony at least to the extent that this meeting took place, it failed to draw reasonable inferences in favor of Gasser about what took place during this encounter. Given Gasser's testimony that at the conclusion of the meeting he felt that Infanti would comply with the agreement, and that he saw no evidence that Infanti was not complying with the agreement until 1986, a reasonable inference would be that Gasser had no reason to sue until at least 1986, a difference in the delay period that might well have made a difference in the final outcome. *See, e.g., Vaupel Textilmaschinen KG v. Meccanica Euro Italia s.p.a.,* 944 F.2d 870, 878–79, 20 USPQ2d 1045, 1052 (Fed.Cir.1991) (holding, based on similar facts and a delay of three and one-half years, that "it would have been an abuse of discretion for the district court to have held that these circumstances resulted in laches"). Alternatively, based on Gasser's testimony the district court could have concluded that the portion of the delay period from 1983 to 1986 was not unreasonable. *See Aukerman,* 960 F.2d at 1034, 22 USPQ2d at 1329 (reasonableness must be judged based on the plaintiff's knowledge). In any case, the district court's treatment of this evidence was improper on summary judgment.

█ The second factor, material prejudice resulting from the plaintiff's delay, "may be either economic or evidentiary." *Id.* at 1033, 22 USPQ2d at 1328 (*citing Cornetta v. United States,* 851 F.2d 1372, 1378 (Fed.Cir. 1988)). Economic prejudice, which was credited by the district court in this case, arises if a defendant "will suffer the loss of monetary investments or incur damages which likely would have been prevented by earlier suit." *Id.,* 960 F.2d at 1033, 22 USPQ2d at 1329.

*Hemstreet v. Computer Entry Sys. Corp.,* 972 F.2d 1290, 23 USPQ2d 1860 (Fed.Cir. 1992), explains the showing required to support a finding of prejudice. There, the record reflected that Computer Entry Systems Corp. (CES) spent "over $23 million on research and development, $6.5 million on direct marketing costs, and $20 million to expand or consolidate manufacturing facilities." *Id.* at 1294, 23 USPQ2d at 1863. Nevertheless, this court held that CES had not proved the prejudice necessary to support a finding of laches because the expenditures had "no explicitly proven nexus to the patentee's delay in filing suit, as *Aukerman* requires for a finding of prejudice." *Id.* at 1294, 23 USPQ2d at 1863. "It is not enough that the alleged infringer changed his position—i.e., invested in production of the allegedly infringing device. The change must be because of and as a result of the delay, not simply a business decision to capitalize on a market opportunity." *Id.* at 1294, 23 USPQ2d at 1863. This court reversed the district court's grant of summary judgment of laches and equitable estoppel. *See id.,* at 1294–95, 23 USPQ2d at 1864.

Here, there was evidence that Infanti's business significantly expanded during the delay period. However, the district court did not require proof of a nexus between the investment and the delay. Instead, it concluded that "[i]n light of Infanti's significant investments, there can be no genuine issue that Infanti was actually prejudiced by Gasser's delay." Mem. and Order at 10. This approach was improper.

Infanti attempts to avoid *Hemstreet* by arguing that, unlike in *Hemstreet*, the district court in this case did not actually shift the burden of proof to Gasser. Indeed, the court correctly noted that prejudice must result from the plaintiff's delay and not from a business decision or gamble that the patent owner would not sue. Nevertheless, it implicitly put the burden on Gasser to prove that Infanti's damage was not caused by the delay by suggesting that Gasser "could have submitted affidavits or business records indicating that Infanti had planned to expand its business long before it formed a belief that Gasser would not pursue its infringement claim." Mem. and Order at 11. Such a showing was not required of Gasser on summary judgment. Moreover, the evidence of record showed that Infanti was indifferent to whether Gasser would sue because of his personal belief that the patent was invalid. Even a considerable investment during a delay period is not a result of the delay if it was "a deliberate business decision to ignore [a] warning, and to proceed as if nothing had occurred." *Hemstreet*, 972 F.2d at 1294, 23 USPQ2d at 1864; *see also Meyers v. Brooks Shoe*, 912 F.2d at 1463, 16 USPQ2d at 1058 ("Brooks has not shown any connection between its activities during the laches period and Meyers' silence. From all that appears, Brooks would have followed the same course regardless of what Meyers did or did not do.").

We reiterate that a change in the economic position of the infringer during the period of delay must be as a result of the delay; the infringer must prove that the change in economic position would not have occurred had the patentee sued earlier. *See, e.g., Aukerman*, 960 F.2d at 1033, 22 USPQ2d at 1328 ("Material prejudice to adverse parties *resulting from* the plaintiff's delay is essential to the laches defense." (emphasis added)); *Meyers v. Asics*, 974 F.2d at 1307–08, 24 USPQ2d at 1038–39 (rejecting the defendants' claim of economic prejudice because "the evidence shows that none of the defendants was concerned that its products might infringe Meyers' patents, and does not show that any of the defendants would have acted differently had Meyers sued earlier").

Finally, the district court erred in not considering that Infanti's copying of Gasser's chairs could be egregious conduct. On a motion for summary judgment of laches a court must consider "all pertinent factors." *Aukerman*, 960 F.2d at 1039, 22 USPQ2d at 1333. One such factor is whether the infringer "has engaged in particularly egregious conduct which would change the equities significantly in plaintiff's favor." *Id.* at 1033, 22 USPQ2d at 1329 (*citing Bott v. Four Star Corp.*, 807 F.2d 1567, 1576, 1 USPQ2d 1210, 1216–17 (Fed.Cir.1986), *overruled on other grounds by Aukerman*, 960 F.2d at 1038–39, 22 USPQ2d at 1333). Intentional copying of the plaintiff's product may so qualify. *See id.* at 1044, 22 USPQ2d at 1338 ("[F]or purposes of summary judgment, Chaides' copying should have been deemed misconduct to be weighed into the court's decision, but it was not."); *Bott*, 807 F.2d at 1576, 1 USPQ2d at 1217 (conscious copying of the plaintiff's product and accelerating infringing sales after an adverse decision on liability constituted egregious conduct defeating the laches defense).

Here, there was undisputed evidence that Infanti intentionally copied Gasser's designs when "custom designing" chairs for customers, which Infanti admitted amounts to approximately 99% of his business, and yet the district court did not weigh this evidence against Infanti. Moreover, until 1988 Infanti never consulted an attorney to get an opinion of whether the patent was invalid. Infanti revealed in his deposition his personal view that it was invalid because there are "a million different extruders in this world" and because he had been unable to obtain such a patent in South America. On summary judgment, the district court should not have ignored this evidence at Gasser's expense. *Cf.*

*CPG Prods. Corp. v. Pegasus Luggage, Inc.,* 776 F.2d 1007, 1014–15, 227 USPQ 497, 502 (Fed.Cir.1985) (finding willful infringement where the defendant's president, without advice of counsel, decided that a patent was invalid); *Ryco, Inc. v. Ag–Bag Corp.,* 857 F.2d 1418, 1428–29, 8 USPQ2d 1323, 1331–32 (Fed.Cir.1988) ("Although the failure to obtain legal advice is not determinative, it is one of the factors supporting a finding of willfulness.").

■ Infanti contends that it did not willfully infringe Gasser's patent because it had been selling bumper edge chairs since 1976. However, undisputed evidence showed that Infanti was aware of Gasser's patent "since approximately January 1979." Mem. and Order at 1. Whether Infanti was justified in producing the chairs prior to the issuance of Gasser's patent is irrelevant to whether it was justified in doing so after being made aware of it. It also bears noting that "[t]hroughout the history of the determination of patent rights, oral testimony by an alleged inventor asserting priority over a patentee's rights is regarded with skepticism, . . . and as a result, such inventor testimony must be supported by some type of corroborating evidence." *Price v. Symsek,* 988 F.2d 1187, 1194, 26 USPQ2d 1031, 1036 (Fed.Cir. 1993) (citations omitted).

### B. *Equitable Estoppel of the Patent Infringement Claim*

■ Equitable estoppel requires the defendant to prove by a preponderance of the evidence that (1) the patent owner, through misleading conduct, led the alleged infringer to reasonably infer that the patent owner did not intend to enforce its patent against the alleged infringer; (2) the alleged infringer relied on this conduct; and (3) due to the reliance, the alleged infringer will be materially prejudiced if the patent owner is allowed to proceed on its claim. *See Aukerman,* 960 F.2d at 1041, 22 USPQ2d at 1335–36. As with laches, egregious conduct must be considered as part of the equitable estoppel determination. *See id.* at 1043–44, 22 USPQ2d at 1337. For the reasons set out above in discussing prejudice and egregious conduct in the laches context, we disagree with the district court's summary dismissal of Gasser's patent infringement claim as barred by equitable estoppel.

■ We also disagree with the district court's analysis of the second factor, reliance, which is not a requirement of laches but is "essential" to equitable estoppel. "To show reliance, the infringer must have had a relationship or communication with the plaintiff which lulls the infringer into a sense of security in going ahead with [its investments]." *Id.* at 1042–43, 22 USPQ2d at 1336–37. Infanti must show that it substantially relied on the misleading conduct of Gasser in taking some action, such as building a plant for producing the infringing product. *See id.*

Infanti was asked whether he relied on Gasser's supposed silence from 1981 to 1988 and answered "that's right." Based solely on this answer, the trial court concluded that Infanti's "decision to expand his chair manufacturing business was based on his belief that Gasser had abandoned its infringement claim." Mem. and Order at 13. This court has rejected similarly conclusory assertions as a basis for summary judgment of equitable estoppel. *See Meyers v. Asics,* 974 F.2d at 1309, 24 USPQ2d at 1040 ("Defendants make numerous conclusory assertions that they relied on Meyers conduct, but they have not presented undisputed facts to show that they did. . . . Furthermore, defendants have not shown that they would have altered their conduct if Meyers had sued earlier."). As in *Meyers v. Asics,* the evidence here showed that Infanti paid little attention to Gasser's complaints.

The district court also inferred from Infanti's conclusory assertions that "absent Gasser's conduct, Infanti would not have acted in the same way and would not have suffered the same economic harm." Mem. and Order at 13. But Infanti did not establish that he would have acted differently under other circumstances. Indeed, as noted above, Infanti ignored Gasser's charges of infringement because he believed the patent was invalid. Thus, Infanti totally failed to show that he acted in reliance on supposed actions of Gasser rather than a business judgment. *See Hemstreet,* 972 F.2d at 1294–95, 23 USPQ2d at 1864 (referring to "a total absence in the

record of any showing by CES that its activities were *in reliance upon* supposed actions of Hemstreet, rather than a business judgment of its own—a judgment which subsequent events may well prove to have been faulty"); *Vaupel Textilmaschinen,* 944 F.2d at 879, 20 USPQ2d at 1052 ("MEI did not rely on any purported abandonment by Vaupel of its patent rights or any intentionally misleading silence to suggest abandonment, but relied on the existence of MEI's own patents. In MEI's communications with Vaupel and its customers, it repeatedly stated that because its own patent covered its loom, . . . it had the right to sell its allegedly infringing looms in the United States.").

### C. *Dismissal of Gasser's Trade–Dress Claim*

In summarily dismissing, on its own motion, Gasser's trade-dress claim as barred by laches and estoppel, the district court stated that "the test for these defenses in the context of trademark infringement is substantially the same as the test . . . in the context of patent infringement," and that Gasser had known since 1983 that Infanti used its trade dress but "unreasonably delayed commencement of this action, to the detriment of Infanti." Mem. and Order at 17. In so ruling, the district court erroneously assumed that the facts pertinent to Gasser's trade-dress claim were necessarily identical to those pertinent to the patent claim.

■■■ Unlike patent rights, which arise at issuance of the patent, rights in trade dress arise when the overall appearance attains recognition and association among the relevant consumer group. *See Two Pesos, Inc. v. Taco Cabana, Inc.,* 505 U.S. ——, ——, 112 S.Ct. 2753, 2756, 120 L.Ed.2d 615 (1992); *Brandir Int'l, Inc. v. Cascade Pacific Lumber Co.,* 834 F.2d 1142, 1148 (2d Cir. 1987). Thus, the precise time at which trade-dress rights accrue is uncertain, and on summary judgment the district court could not assume that Gasser knew it had trade-dress rights when it contacted Infanti in 1983. *Cf. Advanced Cardiovascular,* 988 F.2d at 1161, 26 USPQ2d at 1041–42 (delay is determined from the time the plaintiff has a known claim of infringement).

Even if Gasser thought he had trade-dress rights as of that time, "one cannot be guilty of laches until his right ripens into one entitled to protection." *Schieffelin & Co. v. Jack Co. of Boca Inc.,* 850 F.Supp. 232, 252, 31 USPQ2d 1865, 1880 (S.D.N.Y.1994) (*quoting Johanna Farms, Inc. v. Citrus Bowl, Inc.,* 468 F.Supp. 866, 881, 199 USPQ 16, 28 (E.D.N.Y.1978)). Based on a record relating only to the patent claim, the district court concluded that "Gasser has known since 1983 that Infanti used its trademark." Mem. and Order at 17. Yet Infanti submitted no proof that Gasser knew or should have known that it had such rights to assert against Infanti in 1983. Moreover, the reasonableness of Gasser's delay in asserting his trade-dress rights could depend in part on how much damage Gasser believed it was suffering as a result of the trade-dress infringement. *See Aukerman,* 960 F.2d at 1033, 22 USPQ2d at 1329 (the extent of the infringement is a recognized excuse for delay (*citing Tripp v. United States,* 406 F.2d 1066, 1071, 157 USPQ 90, 94 (Ct.Cl.1969))). This analysis, in turn, would depend on factors that are not relevant to the claim of patent infringement, such as the likelihood of consumer confusion as to the sources of the two products. *See, e.g., Two Pesos,* 505 U.S. at ——, 112 S.Ct. at 2756.

■■■ Trade-dress rights are separate and distinct from patent rights in other ways as well. *See In re Mogen David Wine Corp.,* 328 F.2d 925, 929, 140 USPQ 575, 578–79 (CCPA 1964). For example, the public interest element of trade-dress law, which seeks to prevent consumer confusion over products with similar appearance, may lead a court to grant injunctive relief despite the plaintiff's delay in bringing suit. *Cf. Wallpaper Mfrs., Ltd. v. Crown Wallcovering Corp.,* 680 F.2d 755, 766, 214 USPQ 327, 336 (CCPA 1982) ("WPML may have considered that confusion could be avoided if both companies operated as they had. . . . The courts should not discourage such voluntary accommodations."); *Conagra, Inc. v. Singleton,* 743 F.2d 1508, 1517, 224 USPQ 552, 558–59 (11th Cir.1984) ("[A] court determining whether the doctrine of laches estops the plaintiff from asserting its rights also must consider the public's interest in the trademark as a definite designation of a single source of the goods.").

A court may enter summary judgment on a ground different from those mentioned in

the motion only "if the parties have had an adequate opportunity to argue and present evidence on that point and summary judgment otherwise is appropriate." 10A Charles A. Wright, Arthur R. Miller & Mary K. Kane, Federal Practice and Procedure § 2719, at 15 (2d ed.1983). Here, Gasser did not have that opportunity, and several unresolved issues of material fact made summary judgment inappropriate.

### Conclusion

Accordingly, the judgment of the United States District Court for the Eastern District of New York is reversed and the case is remanded for further proceedings consistent with this opinion.

### COSTS

Costs to Gasser Chair Company, Inc., and George Gasser.

**REVERSED AND REMANDED.**