**FIVE STAR MANUFACTURING, INC., Plaintiff,**

v.

**RAMP LITE MANUFACTURING, INC., Defendant.**

**Civil Action No. 97–2430–GTV.**

United States District Court, D. Kansas.

March 10, 1999.

Richard P. Stitt, Spencer, Fane, Britt & Browne, Kansas City, MO, J. Charles Droege, Overland Park, KS, for plaintiff.

Charles E. Fowler, III, Andrews & Fowler, Chtd., Leawood, KS, Seth M. Nehrbass, Pravel, Hewitt, Kimball & Krieger, Metairie, LA, for defendant.

## MEMORANDUM AND ORDER

VANBEBBER, Chief Judge.

Plaintiff Five Star Manufacturing, Inc. brings this action asserting claims of design patent infringement, trade dress infringement, and unfair competition. The case is before the court on defendant Ramp Lite Manufacturing, Inc.'s motion (Doc. 50) for summary judgment. For the reasons set forth below, the motion is denied.

### I. Summary Judgment Standards[1]

Summary judgment is appropriate if the evidence presented by the parties demonstrates "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The requirement of a "genuine" issue of fact means that the evidence is such that a reasonable jury could resolve the issue either way. *Adler v. Wal–Mart Stores, Inc.,* 144 F.3d 664, 670 (10th Cir.1998) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). An issue is "material" if it is essential to the proper disposition of the claim. *Id.* (citing *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505). The court must consider the record, and all reasonable inferences therefrom, in the light most favorable to the party opposing the motion. *Id.*

The party moving for summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Id.* at 670–71 (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). If the moving party will not bear the burden of persuasion at trial, that party "may make its prima facie demonstration simply by pointing out to the court a lack of evidence for the nonmovant on an essential element of the nonmovant's claim." *Id.* at 671 (citing *Celotex,* 477 U.S. at 325, 106 S.Ct. 2548). Once the moving party has properly supported its motion for summary judgment, the burden shifts to the nonmoving party to go beyond the pleadings and set forth specific evidence that creates a genuine issue of material fact left for trial. *Id.*

---

1. Although the patent infringement claim is subject to the Federal Circuit Court of Appeals' standards for summary judgment, the court has determined that the Federal Circuit and the Tenth Circuit Courts of Appeals apply the same standards under Fed.R.Civ.P. 56(c).

*See, e.g., Bai v. L & L Wings, Inc.,* 160 F.3d 1350, 1353 (Fed.Cir.1998); *Continental Plastic Containers v. Owens Brockway Plastic Prods., Inc.,* 141 F.3d 1073, 1076–77 (Fed.Cir. 1998).

## II. Factual Background

The following facts are either uncontroverted or are based on evidence submitted in summary judgment papers viewed in a light most favorable to the plaintiff. Immaterial facts and facts not properly supported by the record are omitted.

Since 1986, plaintiff has been manufacturing aluminum loading ramps. Plaintiff owns a design patent, U.S. Design Patent No. 331,305 ("the 1305 patent"), which is the subject of the instant action. The design patent claims rights to the ornamental design for an arched lawnmower ramp. The design drawings that encompass the design patent are contained in Figures 1–6.

On August 8, 1989, plaintiff filed with the United States Patent and Trademark Office the patent application that matured into the '305 patent. On February 5, 1992, the Patent and Trademark Office issued an Office Action rejecting plaintiff's patent application under 35 U.S.C. § 103 as unpatentable in light of three prior patents. After plaintiff responded to the Patent and Trademark Office objections, the Patent Examiner issued a notice of allowance in the application, and the patent issued on November 24, 1992.

Plaintiff's President James W. Woodward testified at the preliminary injunction hearing that the design patent protected "the unique design, the arch and the initial look of the ramp." Plaintiff admitted that no surveys have been conducted relating to the patent and trade dress infringement alleged in this case. Woodward, however, stated in his declaration that he has been confronted by customers who have seen defendant's ramps in advertising and mistakenly believed that the ramps were plaintiff's ramps. Defendant's owner, Joseph Larriverre, testified in his deposition that defendant's ramp and the patented ramp look alike from a distance.

Figure 1

Figure 2

Figure 3

Figure 4

Figure 5

Figure 6

Dale Adams, a co-inventor of the '305 patent, stated in his declaration that alternative and feasible ramp designs are available that meet all functional requirements for this type of loading ramp, and that allow loading of Snapper brand lawnmowers. Specifically, Adams stated that alternative ramp designs are available that reduce the angle of incline as a lawnmower approaches the surface on which it is to be loaded, and that such designs provide the necessary clearance, sufficient strength for

the ramp, the necessary support, and sufficient welding area. Adams further stated that alternative cross bar designs are available that provide the proper weight/strength ratio; that alternative ramp floor designs are available that prevent wheels from slipping between the floor members; and that alternative designs are available for the extensions that hold the ramp on the loading surface. Plaintiff submitted evidence of fifteen alternative ramp designs with Adams' declaration. Adams stated in his declaration that each could be produced at approximately the same price as plaintiff's ramps, which embody the patented design.

Adams stated in his declaration that no governmental shipping restrictions limit the size of potential alternative ramps, but private size restrictions apply, which are waived upon payment of a minor surcharge. Alternative methods of shipping also are available that do not have size limitations.

Another ramp manufacturer, Oxlite, has made arched ramps since late 1987 or early 1988. Plaintiff believes that Oxlite is also infringing the '305 patent. Oxlite's ramps also have the same features that plaintiff alleges constitute its trade dress. As early as March 8, 1993, plaintiff corresponded with Oxlite regarding its alleged patent infringement. Plaintiff has never sued Oxlite for patent or trade dress infringement.

Peter Brisco, defendant's president, began defendant's business in 1996 after working for Oxlite. Brisco testified in his deposition that he would not have created Ramp Lite Manufacturing, Inc., if he believed that plaintiff would have sought to enforce its patent rights against defendant. Brisco, however, testified that no one at Oxlite ever told him that plaintiff was claiming that Oxlite violated the '305 patent, and that he picked up the mail at Oxlite for years and never saw any correspondence from plaintiff. While employed by Oxlite, Brisco saw one of plaintiff's ramps in a retail store and noticed that it was patented.

In February 1997, plaintiff first indicated to defendant that it believed defendant was infringing the '305 patent. Plaintiff filed the instant action on August 29, 1997.

## III. Discussion

Plaintiff has alleged claims of design patent infringement, trade dress infringement, and common law unfair competition. Defendant requests summary judgment on all claims.

### A. Patent Infringement Claim

■ Plaintiff alleges that defendant's arched lawnmower ramps infringe the '305 design patent. "Whether a design patent is infringed is determined by first construing the claim to the design, when appropriate, and then comparing it to the design of the accused device." *Oddzon Prods., Inc. v. Just Toys, Inc.*, 122 F.3d 1396, 1404 (Fed.Cir.1997). Defendant argues that the patent claim is invalid because it protects functional, not ornamental, aspects of the ramp design, and that there is no evidence of infringement. Defendant also argues that plaintiff's claims are precluded by laches and estoppel.

#### 1. Claim Construction

■ Claim construction must be based on intrinsic evidence—the patent claim, its description or specification, and the prosecution history. *Bell & Howell Document Mgmt. Prods. Co. v. Altek Sys.*, 132 F.3d 701, 705 (Fed.Cir.1997). The patent claim delimits the right to exclude. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 980 (Fed.Cir.1995), *aff'd*, 517 U.S. 370, 116 S.Ct. 1384, 134 L.Ed.2d 577 (1996). The prosecution history—the "undisputed public record" of proceedings in the Patent and Trademark Office—is, however, of primary significance in understanding the claims. *Id.* On January 11, 1999, the court held a *Markman* hearing to assist the court in construing the claims, and the parties submitted proposed claim

constructions and evidence, including the patent document—containing the claim and description—and the prosecution history. *See id.* at 979 (holding that claims should be construed by considering claim itself, prosecution history, and specification); *Elmer v. ICC Fabricating, Inc.*, 67 F.3d 1571, 1577 (Fed.Cir.1995) (ruling that *Markman* applies to design patent claims).

In this case, the patent claim limits plaintiff's patent rights to "The ornamental design for an arched lawnmower ramp, as shown and described." The claim incorporates twelve drawings, which represent six different views of two embodiments of the ramp design. The patent description indicates the specific view and embodiment contained in each drawing.

■ After considering the patent document in conjunction with the prosecution history, the court construes the scope of the patent claim to include the overall ornamental visual impression of the following: (1) a ramp having two longitudinal side members, each consisting of upper and lower parallel square pieces joined to each other along their longitudinal dimension, the lower piece terminating in angled ends, with the upperside of the lower piece being longer than the lower side of the lower piece, and the upper piece having a squared-off forward end and an angled lower end; (2) a longitudinal square center member with a thinner appearance in a perspective view than the longitudinal side member; (3) the side and center members being upwardly arched and interconnected by closely spaced, relatively thin cylindrical rods extending across the top of the center and side members with exposed ends terminating at the outer edge of the side members and defining the upper surface of the ramp; (4) end members extending between the inner surfaces of the side members and engaging the center member in T-shaped connections; and (5) plates oriented substantially horizontally and aligned longitudinally with the side and center members extending forward from the front end of the ramp.

■ Plaintiff argues that only the seven specific features included in the plaintiff's response to the patent office's initial rejection should be used to construe the claim. The court disagrees. The prosecution history cannot enlarge, diminish, or vary the claim. *Markman,* 52 F.3d at 979. The seven features do not fully describe the design patent claim. The additional features included in the court's construction are clearly visible in the patent drawings, contribute to the overall visual impression of the design, and thereby further distinguish the patent claim from the prior art.

Defendant contends that the arch should not be included in the claim construction because it is functional. In its memorandum in support of summary judgment motion, defendant relies on the court's previous Memorandum and Order dated July 28, 1998 denying plaintiff's motion for a preliminary injunction. In that order, the court found that, based on the evidence presented in the preliminary injunction hearing and briefs, the features included in the patent claim were functional.

■ Although "[a] design patent only protects the novel, ornamental features of the patented design," *Oddzon Prods.,* 122 F.3d at 1405, whether the features of a design are functional or ornamental. is an issue of fact. *See Hupp v. Siroflex of America, Inc.,* 122 F.3d 1456, 1460 (Fed.Cir.1997) (jury finding of "not ornamental" reversed for lack of substantial evidence). "[T]he findings of fact and conclusions of law made by a court granting a preliminary injunction are not binding at trial on the merits." *University of Texas v. Camenisch,* 451 U.S. 390, 395, 101 S.Ct. 1830, 68 L.Ed.2d 175 (1981); *see also TEC Eng'g Corp. v. Budget Molders Supply, Inc.,* 82 F.3d 542, 545 (1st Cir.1996) (preliminary injunction findings "do not bind the court in subsequent proceedings"); *Kansas Health Care Ass'n v. Kansas Dept. of Soc. and Rehab. Servs.,* 903 F.Supp. 1449, 1452 (D.Kan.1995) (court not bound by preliminary injunction evidence

when deciding case on the merits). In opposition to defendant's summary judgment motion, plaintiff has offered sufficient evidence to create a genuine issue of material fact whether the features of the design are ornamental. The court's construction of the patent claim includes all novel features that make up the overall visual impression of the design. The current construction may be further limited at trial by factual determinations regarding the ornamentality of the included features.

## 2. Infringement

 To establish infringement, plaintiff must show that, "in the eye of the ordinary observer, giving such attention as a purchaser usually gives, two designs are substantially the same." *Oddzon Prods.*, 122 F.3d at 1405 (quoting *Gorham Co. v. White*, 81 U.S. (14 Wall.) 511, 528, 20 L.Ed. 731 (1871)). The designs need not be identical to prove infringement, but "the resemblance [must be] such as to deceive such an observer, inducing him to purchase one supposing it to be the other." *Id.* (quoting *Gorham*, 81 U.S. at 528). The overall appearance of the design is controlling. *Id.* The accused does not infringe if only the specific features, and not the overall appearance of the designs, are similar. *Id.*

 Plaintiff relies on evidence of confusion between the accused ramps and the commercial embodiment of the patented design. "When no significant distinction in design has been shown between the patent drawing and its physical embodiment, it is not error ... to compare the embodiment of the patented design with the accused device." *Lee v. Dayton–Hudson Corp.*, 838 F.2d 1186, 1189 (Fed.Cir. 1988). Defendant has not challenged plaintiff's reliance on the design's commercial embodiment, except to argue that many of the features of the ramp are functional and therefore not protected by the design patent. As stated previously, plaintiff has offered sufficient evidence to create a genuine issue of material fact

whether the challenged features are ornamental. Thus, plaintiff's evidence regarding confusion between the accused device and the commercial embodiment of the patented design is sufficient to create a genuine issue of material fact whether the allegedly infringing ramp and the patented design are substantially the same.

## 3. Laches

 Defendant argues that the court should preclude plaintiff from asserting its patent infringement claim under the doctrine of laches. Application of laches is discretionary and depends on all the facts and circumstances of the case. *Gasser Chair Co. v. Infanti Chair Mfg. Corp.*, 60 F.3d 770, 773 (Fed.Cir.1995). To invoke laches, defendant must establish by a preponderance of the evidence that: (1) the plaintiff delayed filing suit for an unreasonable and inexcusable length of time from the time the plaintiff knew or reasonably should have known of its claim against the defendant; and (2) the delay operated to the prejudice or injury of the defendant. *Id.*

 Generally, the defense of laches is personal to the defendant. *A.C. Aukerman Co. v. R.L. Chaides Constr. Co.*, 960 F.2d 1020, 1032 (Fed.Cir.1992); *see also Wanlass v. Fedders Corp.*, 145 F.3d 1461, 1464 (Fed.Cir.1998) (period of delay measured from the time the plaintiff knew or reasonably should have known of the defendant's alleged infringing activities). A defendant may not tack on the time of another party unless there is "some formal transfer of the technology and goodwill of the accused product." *R2 Medical Sys., Inc. v. Katecho, Inc.*, 931 F.Supp. 1397, 1412 (N.D.Ill.1996); *see also* 6 Donald S. Chisum, Patents, § 19.05[2][a][ii] (1998) (courts should limit tacking to cases "where only the ownership of the defendant-business changes hands"). In no event, would the time period begin before issuance of the patent. *Aukerman*, 960 F.2d at 1032.

Defendant began manufacturing ramps in 1994. Defendant has failed to show that plaintiff knew of defendant's allegedly infringing ramps before February 1997; the instant action was filed only six months later in August 1997. Even if defendant could tack on the time that plaintiff delayed filing suit against Oxlite— a contention about which the court has strong reservations—the time period of delay would begin no earlier than November 24, 1992, the date that the patent issued. Defendant also has failed to show other facts and circumstances justifying application of laches to plaintiff's claim. Accordingly, defendant has failed to establish its laches defense.[2]

### 4. Estoppel

Defendant contends that plaintiff is equitably estopped from asserting its patent infringement claim against defendant. Like laches, equitable estoppel is committed to the trial court's discretion. *Aukerman*, 960 F.2d at 1041.

> Equitable estoppel requires the defendant to prove by a preponderance of the evidence that (1) the patent owner, through misleading conduct, led the alleged infringer to reasonably infer that the patent owner did not intend to enforce its patent against the alleged infringer; (2) the alleged infringer relied on this conduct; and (3) due to the reliance, the alleged infringer will be materially prejudiced if the patent owner is allowed to proceed on its claim.

*Gasser Chair*, 60 F.3d at 776.

Defendant argues that, through Brisco, it detrimentally relied on plaintiff's inaction toward Oxlite, where Brisco was an employee. Although inaction may constitute misleading conduct, "plaintiff's inaction must be combined with other facts respecting the relationship or

contacts between the parties to give rise to the necessary inference that the claim against the defendant is abandoned." *Id.* The alleged infringer must know or reasonably be able to infer that the patentee has known of the infringing activities for some time. *Id.* Defendant has failed to offer any evidence that Brisco knew plaintiff was aware of Oxlite's infringement and nevertheless failed to enforce its rights. Thus, defendant has failed to show that plaintiff's inaction created a reasonable inference that plaintiff abandoned its patent rights, and, therefore, constituted misleading conduct. Accordingly, summary judgment is denied with respect to the patent infringement claim.

### B. Other Claims

Plaintiff also asserts claims of trade dress infringement and unfair competition. "Trade dress features are those comprising a product's look or image." *Vornado Air Circulation Sys., Inc. v. Duracraft Corp.*, 58 F.3d 1498, 1502 (10th Cir.1995). The trade dress and unfair competition claims each require plaintiff to establish a likelihood of confusion. *See id.* at 1502–03 (trade dress infringement); *Amoco Oil Co. v. Rainbow Snow*, 748 F.2d 556, 558 (10th Cir.1984) (unfair competition). Defendant argues that summary judgment is appropriate because plaintiff has failed to produce evidence of confusion. The court disagrees. Plaintiff has submitted sufficient evidence to create a genuine issue of material fact whether a likelihood of confusion exists.

Defendant also argues that plaintiff should be equitably estopped from asserting its trade dress infringement and unfair competition claims. For the same reasons stated with respect to the patent infringement claim, defendant has failed to establish that plaintiff's trade dress infringe-

---

2. The court likewise refuses to grant summary judgment to plaintiff on the laches defense as requested in plaintiff's opposition to the summary judgment motion. To evaluate the laches defense, the court must evaluate all of the facts and circumstances in the case, *Gasser Chair*, 60 F.3d at 773, and the parties have submitted a paucity of evidence with the summary judgment papers.

ment and unfair competition claims should be barred. Accordingly, summary judgment is denied on the trade dress infringement and unfair competition claims.

IT IS, THEREFORE, BY THE COURT ORDERED that defendant's motion (Doc. 50) for summary judgment is denied.

Copies of this order shall be mailed to counsel of record for the parties.

**IT IS SO ORDERED.**