Harold S. HEMSTREET, Plaintiff,

v.

COMPUTER ENTRY SYSTEMS CORPORATION, a Delaware corporation, Defendant.

No. 89 C 5935.

United States District Court, N.D. Illinois, E.D.

June 22, 1990.

Leonard M. Ring, Leonard M. Ring & Associates, Edward D. Manzo, Cook, Egan, McFarron & Manzo, Ltd., Chicago, Ill., for plaintiff.

Terry Rose Saunders, Susman, Saunders & Buehler, Chicago, Ill., Gaynell C. Methvin, Thomas L. Crisman, Johnson & Gibbs, James D. Petruzzi, Dallas, Tex., for defendant.

## MEMORANDUM OPINION

BRIAN BARNETT DUFF, District Judge.

Harold Hemstreet owns two patents for a device which is capable of automatically reading and sorting written documents. Various companies manufacture such optical character readers, or OCR's; Mr. Hemstreet has licensed some of those companies, among them International Business Machines, Inc. (IBM) and Recognition Equipment, Inc. (REI). Others, such as Computer Entry Systems Corp, (CES),[1] the defendant in this case, are currently involved in legal disputes with him regarding his rights under the patents. Still others, it may be presumed, are manufacturing OCR's with impunity.[2] CES claims that whether or not Mr. Hemstreet's claim of infringement is valid, he is too late to bring this suit. This court finds that the memoranda, affidavits and other evidence submitted by the parties clearly demonstrate that CES is entitled to summary judgment on each of Mr. Hemstreet's claims.

### I. *Summary Judgment Standard*

The law governing summary judgment is well settled, and requires only a brief recitation here. Rule 56(c) of the Federal Rules of Civil Procedure requires the court to grant a motion for summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." When there is enough evidence in favor of the non-movant that a jury could reasonably return a verdict for that party, a "genuine issue" exists and summary judgment is not appropriate. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Questions about the sufficiency of the evidence submitted with the summary judgment motion should be resolved in favor of the non-movant. *Rodeo v. Gillman*, 787 F.2d 1175 (7th Cir.1986). See also, generally, *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

### II. *Laches*

CES's first argument in support of its motion for summary judgment is that Mr. Hemstreet is barred, by the equitable doctrine of laches, from bringing his claim now. The equitable doctrine of laches, once established, allows an infringer to bar the patent holder filed the suit. *Jamesbury Corp. v. Litton Industrial Products, Inc.*, 839 F.2d 1544, 1550 (Fed.Cir.1988). The defense of laches is available in patent actions if the alleged infringer establishes that:

1) Plaintiff unreasonably and inexcusably delayed in asserting its claim for patent infringement; and

2) Plaintiff's delay in bringing an action resulted in material prejudice to the defendant. (The longer the delay, the less need to show specific prejudice).

*Leinoff v. Louis Milona & Sons, Inc.*, 726 F.2d 734 (Fed.Cir.1984). See also *Jamesbury*, 839 F.2d at 1551–52. CES has of-

---

1. Mr. Hemstreet has alleged that CES manufactures infringing equipment. He also claims that Amer-O-Matic Corp. (AOM), a company which CES acquired in 1982, manufactured infringing equipment both before and after its acquisition by CES. For simplicity's sake, this opinion will refer to both companies as CES, except where it is necessary to specifically mention AOM.

2. A 1975 report about OCR's which Mr. Hemstreet produced from his personal files in connection with this suit profiles 42 companies which manufactured OCR's. Defendant's Statement of Undisputed Facts, ## 24–29. Mr. Hemstreet also had a 1978 report profiling 32 manufacturers.

fered facts to support each of these propositions, and Mr. Hemstreet has failed to successfully rebut them.

The crucial fact here is that Mr. Hemstreet had, in 1983, all the facts pertaining to CES's alleged infringement that he had in 1989, when he finally filed suit. Yet Mr. Hemstreet argues that he didn't *really* know whether CES equipment infringed his patents until he took the deposition of John Guthrie, CES's Vice President of Engineering, *after* he had already filed this suit. Hemstreet's Memorandum in Opposition to Defendant's Motion for Summary Judgment at 3.[3] Mr. Hemstreet cannot have it both ways. Either he knew enough in 1983, and should have filed suit then, or he didn't and therefore should not have filed suit in 1989.

Following are some of the undisputed facts in this case. In July, 1983, Mr. Hemstreet wrote to Amer–O–Matic Corp., a CES subsidiary (see fn. 1, above), accusing it of manufacturing equipment which infringed Mr. Hemstreet's patents. Because the contents and interpretation of the letter is critical to both parties' arguments, as well as this court's holding, this court sets it forth in full:

Gentlemen:

We represent Harold S. Hemstreet, owner of the above-listed patents granted January 23, 1973, both of which are entitled "METHOD AND APPARATUS FOR IDENTIFYING LETTERS, CHARACTERS, SYMBOLS, AND THE LIKE."

On information and belief, your company manufactures equipment which infringes the above patents.

Mr. Hemstreet stands ready to negotiate a reasonable settlement and to license you under the patents.

We have previously licensed IBM and REI. In the case of REI, it was necessary to litigate before a jury, and settlement was reached in the course of trial. At present, we are litigating another action for infringement of said patents in the United States District Court for the Northern District of Illinois. That case, filed by us on November 17, 1981, is entitled *"Harold S. Hemstreet vs. Burroughs Corporation,* No. 81 6412." The action is pending before Judge William T. Hart of that Court.

Enclosed are copies of the patents. We would appreciate hearing from you after you have studied them.

Defendant's Undisputed Fact # 41, Harold Hemstreet Deposition (HH Dep.) Ex. 17A.[4]

Mr. Hemstreet claims, in support of another argument, which this court will address below, that "[t]he July 1, 1983 letter put CES on notice of a claim for infringement. . . . Since a claim was made against [CES], litigation or settlement was part of Hemstreet's clear pattern of conduct." Hemstreet's Local Rule 12 Statement, # 44. If that is so, why did Mr. Hemstreet wait over six years before continuing on his "clear pattern of conduct"? Mr. Hemstreet has not offered, and this court cannot postulate, an acceptable explanation.

The Federal Circuit, as well as various other Circuit Courts, has adopted a presumption in cases in which laches is asserted as a defense to a claim of patent infringement which seems reasonable to this court. The statute of limitations for patent actions, 35 U.S.C. § 286 (1952) is six years. The Federal Circuit uses that number as its yardstick in determining whether a patent owner's delay in bringing suit for infringement has prejudiced the defendant. Where

---

**3.** "HEMSTREET was not able to determine whether infringement of his patents existed until after the deposition of John Guthrie, . . . taken in January, 1990." The instant suit was filed on August 3, 1989.

**4.** Mr. Hemstreet has made a general denial of facts regarding AOM. He does not deny the facts asserted by CES, rather he denies the relevance of occurrences prior to 1983. Therefore, Defendant's # 41 is "undisputed". This court also notes that Mr. Hemstreet has failed, in

many respects, to comply with the requirements of Local Rule 12. The Rule requires the party opposing a motion for summary judgment to submit a statement demonstrating how facts which the movant has offered as "uncontested" are, in fact, contested. Mr. Hemstreet has submitted numbered arguments about how this court should construe the facts submitted by CES, rather than clear statements explaining to this court why those facts are actually in dispute.

the patent owner's delay exceeds six years, a rebuttable presumption of both unreasonableness on the part of the patentee and prejudice to the alleged infringer arises. *Leinoff*, 726 F.2d at 741–42; see also *Jamesbury*, 839 F.2d at 1552. See also *Baker Manufacturing Co. v. Whitewater Manufacturing Co.*, 430 F.2d 1008, 1009–10 (7th Cir.1970); *Olympia Werke Aktiengesellschaft v. General Electric*, 712 F.2d 74, 77 (4th Cir.1983).

Once the presumption arises, as this court holds it has here, the burden shifts to the plaintiff to show that its delay was neither unreasonable nor prejudicial. Mr. Hemstreet sent the letter to CES in July, 1983. He filed suit in August, 1989. Mr. Hemstreet is unable to carry his burden. Mr. Hemstreet's claim that the 1983 letter, to which CES did not respond, upon which he never 'followed-up', and after which he remained silent for over six years, was sufficient to put CES on notice that he intended to pursue his claim of infringement. Mr. Hemstreet argues that his delay in filing suit, or otherwise communicating with CES regarding his rights under the patent, is excusable because he was involved in other litigation (involving his rights under the patents) between 1983 and 1989. *Hemstreet v. Burroughs Corporation and Harris Trust and Savings Bank*, Civil Action 81 C 6412. Hemstreet's Local Rule 12 Statement, Further Undisputed Facts ## 74–90.[5] This court disagrees with both those contentions.

It is true that involvement in other litigation against one alleged infringer can sometimes excuse the failure to sue another alleged infringer. That limited 'escape clause' does not, however, give a patent holder carte blanche to sit on his rights indefinitely. As the court stated in *Jamesbury*, "in order to excuse delay based on other litigation, the patentee must give notice to the alleged infringer of the existence of the other litigation and of an intent to enforce its rights against the infringer at the conclusion of the other litigation." 839 F.2d at 1533 (footnote omitted). See also *Hottel Corp. v. Seaman Corp.*, 833 F.2d 1570 (Fed.Cir.1987); *A.C. Aukerman Co. v. Miller Formless Co., Inc.*, 693 F.2d 697, 699 (7th Cir.1982) (the excuse of pending litigation is "acceptable only if other alleged infringers are given notice of the prior suit [citation omitted] and are informed of the patentee's intent to pursue litigation against them at the close of the earlier suit. [Citation omitted.])

Mr. Hemstreet did notify CES of the *Burroughs* litigation in his July, 1983 letter. Nonetheless, that letter gave rise to no more than an inference that Mr. Hemstreet intended to sue to enforce his rights under the patents, either during, or after the close of, the *Burroughs* litigation. Thus, this court finds that Mr. Hemstreet has fallen short of the standard for excusable delay based upon other litigation. Accordingly, this court agrees with CES that Mr. Hemstreet is barred, by the doctrine of laches, from recovering any damages from CES which accrued prior to August 9, 1989, the date he filed this suit.

### III. *Estoppel*

■ The doctrine of laches does much to defeat Mr. Hemstreet's claim against CES, but it does not destroy it entirely. If laches were the only argument CES advanced, Mr. Hemstreet would still be entitled to collect damages which arose after he initiated this suit. Laches is not, however, the only weapon in CES's arsenal. CES also claims that Mr. Hemstreet is estopped from collecting any post-filing damages.[6]

To prove equitable estoppel, CES must prove both elements of laches, that is, unreasonable delay and prejudice and, in addition, CES must show that Mr. Hemstreet's affirmative conduct induced CES to believe that he had abandoned his claims, and that

---

5. That litigation actually began in 1981, and was not finally concluded until September 9, 1988. Hemstreet's Local Rule 12 Statement, Further Undisputed Facts ## 74–89.

6. "Post-filing" damages are also limited, since Mr. Hemstreet's patents expired on January 23, 1990. Thus, the only damages he could possibly recover are those which accrued between the date he filed suit, August 3, 1990, and the expiration date.

CES did in fact believe that, to its detriment. *Illinois Tool Works v. Grip–Pak, Inc.*, 725 F.Supp. 951 (N.D.Ill.1989). CES is not entitled to the same presumptions in its estoppel argument as it was given when this court considered its laches claim. Mr. Hemstreet's prolonged silence weighed heavily in CES's favor when it claimed laches. Silence is not nearly so probative when the defendant claims estoppel.

"For silence to work an estoppel, some evidence must exist to justify an inference that the silence was sufficiently misleading to amount to 'bad faith.'" The silence must be sufficient "to induce the alleged infringer to reasonably infer that the patentee has abandoned his patent claims" against the alleged infringer.

*Jamesbury*, 839 F.2d at 1554. (Citations and footnotes omitted). See also *Hottel Corp. v. Seaman Corp.*, 833 F.2d 1570, 1573 (Fed.Cir.1987). While Mr. Hemstreet had the burden of disproving CES's laches claim, CES retains the burden of proving that it is entitled to estop Mr. Hemstreet from recovering his post-filing damages.

This court has already decided that Mr. Hemstreet's delay was unreasonable and prejudicial. The questions remaining, then, are 1) whether Mr. Hemstreet's (at least) six year silence was misleading, and 2) whether CES was in fact misled, and consequently acted to its detriment. This court answers both questions in the affirmative.

The first question is whether CES was reasonable in inferring from Mr. Hemstreet's actions that he had abandoned his claim. Mr. Hemstreet does not dispute that after he wrote to CES in July, 1983, he never again raised his claim of infringement until February, 1989, shortly before he filed suit.[7] In the meantime, as Mr. Hemstreet was aware, or reasonably should have been aware, CES was continuing to expand its OCR business.

Mr. Hemstreet has acknowledged that, as part of his effort to protect his patents,

he read trade journals and attended trade shows which featured OCR equipment. Defendant's Statement of Undisputed Facts ## 17–20. Some of the specific reports which Mr. Hemstreet maintained in his files, and shows which he attended, featured CES equipment. *Id.* The issue, of course, is not whether Mr. Hemstreet attended shows, or read reports, but whether his actions could reasonably have been expected to lull CES into believing he had abandoned his claims against it. The evidence that he was aware of what was going on in the industry, however, is also evidence of what was happening during the span between 1983 and 1989. CES was expanding, and its expansion was public knowledge. CES was continuing to manufacture and market its OCR's, and that too was public knowledge. It was reasonable for CES to expect that if someone did have a claim against it for patent infringement, that person would have come forward with more than a single letter in nearly six years, or indeed, with some claim prior to 1983—CES began developing OCR's in 1971, and marketing them in 1973. Defendant's Statement of Undisputed Facts, ## 3, 4. As the Seventh Circuit stated in *Aukerman*, "[m]ere lapse of time, without more, is not sufficient to found a defense of estoppel [citations omitted], but notice from a patentee to the defendant that infringement has occurred, accompanied by a threat of enforcement, and followed by an extended period of nonenforcement, is affirmative conduct from which an alleged infringer could reasonably infer that the claim against it had been abandoned. [Citations omitted.]" 693 F.2d at 701.

This court therefore finds that the undisputed evidence shows that Mr. Hemstreet's delay in asserting his claim and filing his suit was sufficient to cause CES to infer that he had abandoned his claim against it. This court further finds that CES did in

---

7. There was other correspondence during that time. CES acknowledged Mr. Hemstreet's July, 1983 letter; and three letters between Mr. Hemstreet and CES related to CES's request for copies of the license agreements Mr. Hemstreet had already negotiated. Also, in 1977, Mr. Hemstreet had written to CES, without identifying himself as a patent holder, requesting information about CES's OCR equipment. See Appendix to Defendant's Motion for Summary Judgment, Ex. 16, 18C, 19A, 20 and 20A.

fact believe that, and acted to its detriment in reliance upon that belief.

As this court has already noted, CES began its development of OCR equipment in 1971. Mr. Hemstreet failed to notify it of any potential claim until 1983. After sending a single letter stating that "[o]n information and belief", CES's OCR equipment infringed his patents, Mr. Hemstreet never again asserted a claim against CES until he notified it that he intended to file suit. In the meantime, CES spent over $23 million on research and development, $6.5 million on direct marketing costs, and $20 million to expand (or consolidate) the facilities it used to manufacture its OCR's.[8] That is detrimental reliance. This court therefore concludes that Mr. Hemstreet is estopped from collecting any damages which may have arisen due to CES's alleged infringement of his patents between the date he filed suit and the date his patents expired.

## IV. *Conclusion*

Mr. Hemstreet is barred, by the doctrine of laches, from asserting any claims against CES for damages which arose prior to the date he filed this suit. He is estopped from collecting damages which may have arisen after the suit was filed. Accordingly, this court grants CES's motion for summary judgment as to each count of Mr. Hemstreet's complaint.

---

8. Mr. Hemstreet responds to CES's claim of expenditures by arguing that "[t]he expansion of facilities since 1983 has been to consolidate space, because the acquisitions by CES of other companies gave CES scattered facilities." Whether or not it is true that CES expanded certain facilities in order to consolidate space, the only reasonable purpose for such a consolidation is reliance on the continued growth and profitability of the OCR business. Furthermore, the expansion of facilities accounts for less than half of the substantial amount CES expended on its OCR business.