**Harold S. HEMSTREET, Plaintiff,**

v.

**BANCTEC, INC., a Delaware Corporation, Defendant.**

**No. 89 C 05939.**

United States District Court, N.D. Illinois, E.D.

Oct. 16, 1990.

Leonard M. Ring, Leonard M. Ring & Assoc., Edward D. Manzo, Cook & Egan, Ltd., Chicago, Ill., for plaintiff.

Terry Rose Saunders, Susman Saunders & Buehler, Chicago, Ill., Gaynell C. Methvin, Thomas L. Crisman, Dallas, Tex., for defendant.

## MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

Harold S. Hemstreet holds two patents relating to "character recognition device" technology. When put to practical effect, this technology permits a machine to automatically read and sort written documents. BancTec, Inc. ("BancTec"), for example, sells its character recognition devices to major banks for use in processing checks and other commercial paper. Hemstreet filed suit against BancTec on August 3, 1989, alleging an infringement of his patents. BancTec now moves for summary judgment based on laches and estoppel. It argues that even if Hemstreet's claims are valid, he is too late to bring this suit. We find that the memoranda, affidavits, exhibits, and other evidence submitted by the parties clearly demonstrate that BancTec is entitled to summary judgment on each of Hemstreet's claims.

BancTec was founded in 1972. It started developing its character recognition equipment in 1975, and first sold that equipment two years later. Since then, BancTec has ambitiously expanded, both through internal growth and external acquisition. In 1983, it acquired Input Business Machines, Inc. ("IBMI"). In 1984, it acquired the reader/sorter division of Magnetic Peripherals, Inc. ("MPI"), a "joint venture" company started by Honeywell Corp. ("Honeywell"), NCR Corp. ("NCR"), and Control Data Corp. ("CDC"); it also acquired Scan Data Corp. ("Scan Data"). In 1989, BancTec acquired Computer Entry Systems Corp. ("CES"). From 1975 to 1989, BancTec invested over $127 million in the development of its character recognition business.

Two similar suits involving the Hemstreet patents have recently been adjudicated in the Northern District of Illinois. In both instances, summary judgment on laches and estoppel was granted against Hemstreet. *See Hemstreet v. Lundy Elecs. & Sys., Inc.*, No. 89 C 5940, 1990 WL 114649 (N.D.Ill. July 23, 1990); *Hemstreet v. Computer Entry Sys. Corp.*, 741 F.Supp. 1308 (N.D.Ill.1990). This latest suit, with one easily resolved twist, is identical to those cases, and we adopt the reasoned opinion set forth by Judge Brian Barnett Duff in *Hemstreet v. Computer Entry Systems Corp.*, and followed by Judge James B. Zagel in *Hemstreet v. Lundy Electronics & Systems, Inc.*

Like the defendants in those earlier cases, BancTec and Scan Data received the same July 1, 1983 letter from Hemstreet's attorney alleging infringement, offering to negotiate a licensing agreement, and advising it of ongoing litigation against another corporation. This is insufficient to excuse Hemstreet's delay of more than six years in filing suit; "that letter gave rise to no more than an inference that Mr. Hemstreet intended to sue to enforce his rights under the patents, either during, or after the close of, the [other] litigation." *Hemstreet v. Lundy Elecs. & Sys., Inc.*, 741 F.Supp. at 1311. Thus, Hemstreet's delay of more than six years constitutes unreasonable and inexcusable delay.

The twist that makes this suit somewhat different from the two earlier infringement cases involves Hemstreet's communication with IBMI and the MPI corporations (Honeywell, NCR, and CDC).[1] Hemstreet understandably directs the court to focus on these letters, which, unlike the aforementioned communications with BancTec and Scan Data, explicitly announce his intent to sue to enforce his patent rights. Hemstreet reasons that because BancTec's predecessors knew that he would litigate to protect his rights, BancTec must also have known.

---

1. It is worth noting that Hemstreet apparently never communicated directly with MPI itself, or, for that matter, with the BancTec affiliate that assumed responsibility for the reader/sorter assets purchased from MPI.

This contention, however, is not supported by either the series of letters exchanged between Hemstreet and BancTec's "predecessors" or by any reasoned argument in Hemstreet's memorandum opposing summary judgment.[2] On August 16, 1978, Hemstreet's attorney sent the following letter to IBMI, Honeywell, NCR, and CDC:

> We represent Harold S. Hemstreet, owner of U.S. Patents Nos. 3,713,099 and 3,713,100 granted January 23, 1973, both of which are entitled "METHOD AND APPARATUS FOR IDENTIFYING LETTERS, CHARACTERS, SYMBOLS, AND THE LIKE."
>
> On information and belief, your company manufactures equipment which infringes the above patents.
>
> Mr. Hemstreet stands ready to negotiate a reasonable settlement and to license you under the patents.
>
> At present we are litigating an action for infringement of said patents in the United States District Court for the Northern District of Illinois. That case filed by us on September 26, 1977, is entitled *Harold S. Hemstreet vs. Spiegel, Inc.*, No. 77 C 3576." The action was assigned and is pending before Judge George N. Leighton of that Court.
>
> If we have not settled our claim against you by the time we conclude the above litigation, we intend to institute an infringement action against you.
>
> We would be pleased to hear from you.

Plaintiff's Exhibits AK, AV, BC, BK.

Each company responded in a different way to Hemstreet's initial letter.[3] IBMI noted (August 21, 1978) that it manufactured its character recognition equipment under its own patent, and, in response to a follow-up from Hemstreet (November 12, 1981) ("[w]e are still interested in negotiating a reasonable license with you"), referred the matter to a New York patent lawyer who advised Hemstreet that "our client does not believe that any of its products utilize [the Hemstreet] patents and hence no license is called for." Plaintiff's Exhibits AL, AM, AN.

Honeywell wrote back (August 28, 1978) to say that it would investigate Hemstreet's claim and get in touch when it completed that inquiry. It subsequently received the same "licensing" follow-up letter that Hemstreet sent IBMI (November 12, 1981); on January 14, 1982, it responded that because Hemstreet had not specified any particular infringing product, its patent lawyer had been unable to "identify any product that falls within the scope of the claims of the two patents." Hemstreet then provided Honeywell with a specific list (March 1, 1982). Honeywell wrote back to say that those particular devices had been supplied to it on an "OEM" (original equipment manufacturer) basis, that it would notify that supplier (CDC), and that it had ceased using the identified apparatus, thus rendering the "question of infringement and license" moot (March 24, 1982). Plaintiff's Exhibits AW, AX, AY, AZ, BA.

CDC (September 12, 1978) requested specificity, and noted that its character recognition machinery was based on technology patented by the Rabinow Engineering Co. Honeywell referred Hemstreet's March 1, 1982 letter to CDC, which responded to Hemstreet (March 25, 1982) that the identified equipment was assembled by MPI. A subsequent letter (October 22, 1982) confirmed that although certain equipment might originally have been assembled by MPI, Honeywell had discontinued those

---

**2.** Despite the fact that both parties flaunt local rules regarding the length of supporting memoranda, neither really addresses the "successor in interest" notice question in any meaningful way. The attorneys for both parties are advised to review United States District Court for the Northern District of Illinois General Rules 9(d) ("[n]o brief in support of or in opposition to any motion pending in this court shall exceed 15 pages without prior approval of this court") and 9(e) ("[d]ocuments which fail to comply with the provisions of [Rule 9] shall be filed subject to being stricken by the court ..."). Both sides use narrow margins and numerous footnotes (single-spaced, and printed in small type) to rehash issues identical to ones already adjudicated by other courts while virtually ignoring the questions that make this case somewhat different.

**3.** NCR's response, if any, is not part of the record in this case.

models; additionally, CDC informed Hemstreet that certain other identified equipment had been supplied to it by IBMI, which, under the purchasing agreement, was obligated to defend CDC against charges of patent infringement. CDC promised to advise IBMI of Hemstreet's allegations. Plaintiff's Exhibits BD, BE, BF.

On July 1, 1983, the same day that he wrote BancTec and Scan Data, Hemstreet's attorney sent the following letter to IBMI and Honeywell:

> As you may recall, we represent Harold S. Hemstreet in regard to patent and related matters.... We previously sent a letter to you in August of 1978, a copy of which is attached. Mr. Hemstreet has not abandoned his claims against you, but has been busy with the litigation identified in the prior letter. Mr. Hemstreet is still prepared to discuss the matter of your patent infringement and your taking licenses under his patents.
>
> Please be advised that we have concluded ... Case No. 77 C 3576, which we previously wrote you about. That suit was settled during trial with [the defendants] taking a license.
>
> Please be further advised that we are currently engaged in an action entitled, "Harold S. Hemstreet v. Burroughs, et al.," Case No. 81 C 6412, which is presently pending before the United States District Court for the Northern District of Illinois. We anticipate a favorable outcome in that case also.
>
> Also, please be advised that IBM [International Business Machines, Inc.] is a further licensee under the above Hemstreet patents.
>
> If you and Mr. Hemstreet have not resolved your differences, upon the conclusion of the Burroughs suit we will again take up with you the matter of your infringement of Mr. Hemstreet's patents.

Plaintiff's Exhibits AO, BB.

There are several reasons why it would be inequitable to find that Hemstreet's communications with IBMI, Honeywell, NCR, or CDC put BancTec on notice regarding Hemstreet's intent to sue to enforce his patent rights. Two seem particularly important. First, Hemstreet did not "institute an infringement action" against any of BancTec's "predecessors" following the conclusion of the *Spiegel* litigation, as he said that he would in his August 16, 1978 letters. When that suit settled, he filed an action against Burroughs—not against IBMI, Honeywell, NCR, or CDC (or MPI). Second, Hemstreet fails to show, particularly given the sporadic and contradictory nature of his letter writing,[4] precisely why BancTec should be held accountable for notice of litigation given to other corporations. If the letters between 1978 and 1983 to IBMI, Honeywell, NCR, and CDC were intended to put BancTec on notice, why does Hemstreet's February 1, 1989 letter to BancTec refer back only to the July 1, 1983 BancTec letter, and not also to the other communications?

We find that BancTec cannot equitably be held responsible for inconsistent and intermittent communications between Hemstreet and other companies, and that those communications do not excuse Hemstreet's delay of more than six years in filing this claim for patent infringement against BancTec. Further, despite Hemstreet's attempts to argue to the contrary, there can be no doubt that his delay in bringing this action resulted in material prejudice to BancTec. *See Hemstreet v. Lundy Elecs. & Sys., Inc.*, slip op. at 2. Hemstreet is

---

4. It is arguable that the July 1, 1983 letter to IBMI and Honeywell did not properly notify those corporations of Hemstreet's renewed interest in litigation. The "involvement in other litigation" escape clause from the doctrine of laches and estoppel "does not ... give a patent holder carte blanche to sit on his rights indefinitely." *Hemstreet v. Computer Entry Sys. Corp.*, 741 F.Supp. at 1311. The excuse of pending litigation is "acceptable only if other alleged infringers are given notice of the prior suit [citation omitted] and are informed of the patentee's intent to pursue litigation against them at the close of the earlier suit. [Citation omitted]." *A.C. Aukerman Co. v. Miller Formless Co.*, 693 F.2d 697, 700 (7th Cir.1982). Our holding, however, does not depend on whether or not Hemstreet's communication to IBMI and Honeywell on July 1, 1983 met the notice requirements excusing delay in filing a suit.

thus barred by the equitable doctrine of laches from bringing that claim now.

With regard to estoppel, we agree with Judge Duff's opinion in *Hemstreet v. Computer Entry Systems Corp.* Quoting the Seventh Circuit's opinion in *A.C. Aukerman*, the court reiterated that " 'notice from a patentee to the defendant that infringement has occurred, accompanied by a threat of enforcement, and followed by an extended period of nonenforcement, is affirmative conduct from which an alleged infringer could reasonably infer that the claim against it had been abandoned. [Citation omitted].' " *Hemstreet v. Computer Entry Sys. Corp.*, 741 F.Supp. at 1312 (quoting *A.C. Aukerman*, 693 F.2d at 701); *accord Hemstreet v. Lundy Elecs. & Sys., Inc.*, slip op. at 3. That is certainly the case here.

For the reasons discussed above, we grant BancTec's motion for summary judgment based on laches and estoppel. It is so ordered.