**ROCKWELL INTERNATIONAL CORPORATION and Rockwell Science Center, Inc., Plaintiffs,**

v.

**SDL, INC., Defendant.**

**No. C95–1729 MHP.**

United States District Court, N.D. California.

June 29, 2000.

Nancy J. Geenen, Foley & Lardner, San Francisco, CA, Larry L. Shatzer II, Foley & Lardner, Washington, DC, for plaintiff.

Michael M. Carlson, Morrison & Foerster, Palo Alto, CA, for defendant.

## MEMORANDUM AND ORDER

PATEL, Chief Judge.

On May 22, 1995, Plaintiffs Rockwell International Corporation and Rockwell Science Center ("Rockwell") filed this action against SDL, Inc. ("SDL") alleging infringement of United States Patent Number 4,368,098 ("the '098 patent"). This court subsequently stayed further proceedings pending the outcome of an action before the United States Court of Federal Claims in which Rockwell sued the United States for infringement of the '098 patent. SDL intervened as a party defendant in that dispute shortly after Rockwell initiated the present infringement action. This action was reopened on January 13, 1999. SDL now moves for partial summary judgment based on the equitable doctrine of laches, alleging that Rockwell unreasonably delayed filing this action and thereby caused SDL material prejudice. A hearing on this motion was held on June 19, 2000. Having considered the parties' arguments and submissions, and for the reasons set forth below, the court hereby enters the following memorandum and order.

## BACKGROUND

### I. The '098 Patent and MOCVD Process

Plaintiff Rockwell's '098 patent was developed by Dr. Harold Manesevit, who filed a patent application on February 13, 1968. The United States Department of Commerce, Patent Office, first rejected the application. Manesevit then responded and engaged the Patent Office in a series of correspondence. The Patent Office ultimately approved the application and issued the '098 patent on January 11, 1983.

The '098 patent relates to a process known as metal organic chemical vapor deposition ("MOCVD"). In general, this process causes gaseous reactants containing certain atomic elements from Groups III and IV of the periodic table to break down, deposit on a single crystal substrate, and form a single crystal or "epitaxial" film of semiconductor material. In particular, the '098 patent claims a special MOCVD process that achieves the epitaxial film deposit in a "cold-wall" reactor. The cold-wall reactor has been defined as one in which the substrate site is heated while the exterior walls remain significantly cooler.[1]

SDL was formed in March 1983. SDL uses an MOCVD process to manufacture high-power laser diodes. SDL began marketing its laser diode products in 1984.

---

1. *Rockwell Int'l Corp. v. United States,* 147 F.3d 1358, 1363 (Fed.Cir.1998) (affirming United States Federal Court of Claims' defini-tion of cold-wall reactor under the '098 patent).

Many of SDL's product data sheets advertise that it uses a "state-of-the art," "[a]dvanced," or "highly efficient" MOCVD technology to produce its devices. *See* Evans Dec., Exhs. A–N. A "representative" SDL advertisement employs similar language, describing SDL's MOCVD process as an "[a]dvanced MOCVD growth technique[ ]." Evans Dec. ¶ 15 & Exh. AA. The advertisements and data sheets also describe the technical specifications of some of SDL's products. *See id.* Exhs. A–N; Exh. AA. SDL used these materials to market its products from June 1984 through May 1990. *See* Evans Dec. ¶ 4.

During the same time period, SDL distributed product catalogues via trade shows, trade publications and other interested parties. *See* Evans Dec., Exhs. O–U. Like the data sheets and advertisements, these catalogues describe generally the benefits of using MOCVD technology to manufacture SDL's devices: "MOCVD processing permits very close control of material composition, layer interfaces, and device geometry. MOCVD also allows fabrication of multiple quantum wells in the diode active layer, increasing electrical to optical efficiency and lowering threshold current requirements." Evans Dec., Exh. O at 2; *see also* Evans Dec., Exhs. P at 1; R at 2, 8; S at 2 (using the same or very similar language to describe the MOCVD process).

In 1985, 1986, November 1988 and July 1989, SDL also made available "technical notes" to interested parties. These publications describe the MOCVD process in more detail than the advertisements or product manuals. They identify certain chemical compounds used in the process, state that the compounds are combined on a heated substrate, and include a simple MOCVD reactor schema. *See* Evans Dec., Exhs. V at 1; W at 5–6; X at 9.

The first communication on record between Rockwell and SDL is a January 7, 1985 letter in which Rockwell stated that its "attention" had been called to SDL's advertised use of MOCVD technology.[2] Scifres Dec., Exh. A. In that letter, Rockwell enclosed a copy of its '098 patent and informed SDL that licenses were available on reasonable terms. *See id.* SDL's patent counsel responded by letter of March 25, 1986, concluding it needed no license because SDL practiced a different technology and because SDL doubted the validity of the '098 patent. *See* Scifres Dec., Exh. B. On July 23, 1989, Rockwell rejected SDL's assertion that the '098 patent was invalid and requested clarification as to the bases of SDL's conclusion that it did not need a license. Rockwell also renewed its offer to negotiate a license, stating it believed the '098 patent covered a basic MOCVD process that would interest anyone using such technology. *See* Scifres Dec., Exh. C. SDL then replied by letter of October 1987 clearly stating SDL does not infringe the '098 patent. SDL's patent counsel distinguished Rockwell's patent, explaining SDL employed a hot-wall process whereas Rockwell used a cold-wall process: "Our processes are not of the cold wall type and do not read on the '098 claims." Scifres Dec., Exh. E at 1, 2. SDL further disputed the validity of the patent and again concluded a license was unnecessary. *See id.*

Later, by letter of January 23, 1990, Rockwell rebutted SDL's validity assessment and apprised SDL of its extended licensing program. Rockwell suggested a meeting because it thought SDL's characterization of its hot-wall process insuffi-

---

2. Because SDL traces its entire laches argument back to this letter, its relevant content follows:

> Our attention has been directed to your recent advertisement in a trade publication indicating the use of MOCVD technology for the manufacture of semiconductor laser diodes.

> In that connection, we wish to bring your attention to the enclosed U.S.Patents pertaining to MOCVD technology. Licenses are available from Rockwell under such patents on reasonable terms and conditions.

ciently detailed to determine whether it infringed the '098 patent. Rockwell stated that SDL's activities "may very well meet the patent claims" but concluded it was not "ineluctably clear" whether SDL's process did meet those claims. Scifres Dec., Exh. E at 2. Rockwell cited a June 1984 advertisement and a 1981 presentation by one of SDL's founding corporations to support its statements. *See id.*

From July 1990 through February 1994, the two companies exchanged correspondence similar to their previous communications. Rockwell consistently requested more detail about SDL's MOCVD process and SDL consistently reiterated its belief that its process did not read on the '098 claim. *See* Scifres Dec., Exhs. F–L.

By 1988 Rockwell began to license companies utilizing the technology claimed by the '098 patent; it continued this campaign through 1993. *See* Pernick Dec., Exh. G; Davey Dec. ¶¶ 3–6.

Rockwell subsequently filed this action.

## II. *History of the Laches Defense*

After Rockwell filed this action in 1995, SDL asserted the laches defense in its answer. SDL then intervened in Rockwell's action against the United States as a party defendant pursuant to Rule 24(b) of the Rules of the Court of Federal Claims. This court suspended the present action pending resolution of Rockwell's claims against the United States and SDL in the Federal Court of Claims. The Court of Claims decided to try Rockwell's action in three phases. *See Rockwell Int'l Corp. v. United States,* 37 Fed.Cl. 478, 480–81 (Fed.Cl.1997) (hereinafter *"Rockwell I"*), *aff'd in part, rev'd in part,* 147 F.3d 1358 (Fed.Cir.1998). After SDL intervened, the parties stipulated that SDL's laches defense would be considered in the third stage. *See* Pernick Dec., Exh. A at 1–2 (Stipulated Order Regarding Third and Fourth Affirmative Defenses Raised by SDL, Inc.).

The Claims Court did not initially consider SDL's laches defense because it granted SDL's summary judgment motion based on invalidity, finding the '098 patent invalid for obviousness. *Rockwell I,* 37 Fed.Cl. at 506. On appeal, the Federal Circuit vacated the Claims Court's decision in part and remanded because outstanding issues of material fact precluded summary judgment based on obviousness. *See Rockwell Int'l Corp. v. United States,* 147 F.3d 1358, 1367 (Fed.Cir.1998) (hereinafter *"Rockwell II "*). The Claims Court did not reach SDL's laches defense on remand. Rockwell and the United States settled the action and thereby deprived the Claims Court of jurisdiction over the dispute between Rockwell and SDL. As a result, this court is the first to consider whether Rockwell's damages, if any, should be limited by the equitable doctrine of laches.

## *LEGAL STANDARD*

### I. *Summary Judgment*

Under Federal Rule of Civil Procedure 56, summary judgment shall be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial ... since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *see also T.W. Elec. Serv. v. Pacific Elec. Contractors Ass'n,* 809 F.2d 626, 630 (9th Cir.1987).

The moving party bears the initial burden of identifying those portions of the record which demonstrate the absence of a genuine issue of material fact. The burden then shifts to the nonmoving party to "go beyond the pleadings, and by [its] own affidavits, or by the 'depositions, answers to interrogatories, or admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex,* 477 U.S. at 324, 106 S.Ct. 2548 (citations omitted); *see also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (finding a dispute about a material fact is genuine "if the evidence

is such that a reasonable jury could return a verdict for the nonmoving party"). The moving party discharges its burden by showing that the nonmoving party has not disclosed the existence of any "significant probative evidence tending to support the complaint." *First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 290, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968).

The court's function on a motion for summary judgment is not to make credibility determinations. *See Anderson*, 477 U.S. at 249, 106 S.Ct. 2505. The inferences to be drawn from the facts must be viewed in a light most favorable to the party opposing the motion. *See T.W. Elec. Serv.*, 809 F.2d at 631.

The Federal Circuit has consistently held that summary judgment is appropriate in patent cases as in any other type of case. *See, e.g., Paragon Podiatry Lab., Inc. v. KLM Lab., Inc.*, 984 F.2d 1182, 1190 (Fed.Cir.1993); *Hodosh v. Block Drug Co.*, 786 F.2d 1136, 1141 (Fed.Cir. 1986).

## II. *Laches*

■ To invoke the laches defense, defendant must prove (1) that plaintiff delayed filing suit for an unreasonable and inexcusable length of time after plaintiff had actual or constructive knowledge of its claim, and (2) the delay caused defendant material prejudice or injury, which may be economic or evidentiary in nature. *See A.C. Aukerman Co. v. R.L. Chaides Constr. Co.*, 960 F.2d 1020, 1032 (Fed.Cir. 1992).

■ Courts presume these elements have been met if defendant satisfies its burden of proving plaintiff knew or should have known of its claim against defendant at least six years before filing suit. *See id.* at 1034, 1036–37; *see generally* 6 Donald S. Chisum, *Chisum on Patents* § 19.05[2] (1999). The burden of production then shifts to plaintiff: It may rebut the six-year presumption by offering evidence showing a genuine issue of fact as to whether the delay was reasonable or caused defendant material prejudice. *See*

*Aukerman*, 960 F.2d at 1038. Such evidence need not be persuasive, since the burden of persuasion remains with the defendant at all times. *See id.* at 1036–37.

■ Laches limits the scope of damages a court will consider. In patent infringement actions, laches bars recovery of damages plaintiff might have suffered before initiating litigation but does not bar prospective relief. *See id.* at 1040.

Because the nature of the laches defense is fact-intensive, summary judgment often will be inappropriate, but may be granted under some circumstances. *See Chubb Integrated Sys., Inc. v. National Bank of Washington*, 658 F.Supp. 1043, 1047 (D.D.C.1987). The Federal Circuit has shown some reluctance to uphold the granting of such motions. *See, e.g., Jamesbury Corp. v. Litton Industrial Prods., Inc.*, 839 F.2d 1544, 1551 (Fed.Cir. 1988) (finding "[l]aches is an equitable defense which depends on consideration of all of the facts in the particular case").

## DISCUSSION

### I. *The Six–Year Presumption*

SDL invokes the six-year presumption in arguing that Rockwell's delay in filing this action is presumptively unreasonable and prejudicial to SDL.

■ A patentee activates the six-year time period as soon as it acquires actual or constructive knowledge of alleged infringement. *See Aukerman*, 960 F.2d at 1034. This action was filed on May 22, 1995. Thus, in order to prevail in triggering the presumption, SDL must show Rockwell knew or should have known of the alleged infringement on or before May 22, 1989. More specifically, because SDL raises laches on summary judgment, it must show an absence of genuine disputes on material issues as to whether Rockwell had such knowledge before the crucial 1989 date. *See Wanlass v. Fedders Corp.*, 145 F.3d 1461, 1464 (Fed.Cir.1998). This knowledge may be actual or constructive.

## A. *Actual Knowledge*

### i. *The "Actual Knowledge" Standard*

The parties dispute how much Rockwell must have known to trigger the laches clock. This court declines to adopt a hard and fast rule regarding the level of knowledge requisite to trigger laches; the facts of this case do not require it, nor does the equitable nature of laches generally warrant mechanical rules. *See Aukerman,* 960 F.2d at 1034. For now, it is enough to find that Rockwell must have had more than a mere suspicion but less than absolute assurance of SDL's alleged infringement in order to activate the laches clock.

### ii. *Rockwell's 1985 Letter*

■ The parties dispute whether Rockwell activated the six-year clock when it first communicated with SDL by letter of January 7, 1985. In that letter, Rockwell stated it was aware SDL recently advertised its use of MOCVD technology. *See* Scifres Dec., Exh. A. The letter does not enclose or reference a specific advertisement. The only advertisement on record, which SDL claims is "representative," describes generically SDL's process as an "[a]dvanced MOCVD growth technique[ ]." Evans Dec. ¶ 16, & Exh AA. SDL asserts Rockwell was "well aware" of SDL's alleged infringement because Rockwell understood all MOCVD technology infringed the '098 patent.

The court finds Rockwell's 1985 letter did not evince actual knowledge for four reasons. First, the 1985 letter enclosed a copy of the '098 patent. SDL had the benefit of comparing the patent's claims to SDL's actual MOCVD process. It is therefore disingenuous for SDL to argue the 1985 letter shows actual knowledge when SDL asserts it believed in good faith, after actually comparing the processes, that SDL's technology did not read on Rockwell's claims.

Second, the prosecution history of the '098 patent shows Rockwell claimed a narrower MOCVD band of technology than SDL suggests. The record reveals Rockwell understood its patent covered only cold-wall MOCVD reactors. *See Rockwell I,* 37 Fed.Cl. at 489. In fact, the Patent Office only issued the '098 patent after its inventor distinguished his MOCVD process as a "cold wall" reaction in order to avoid obviousness under other patents. *Id.* In *Rockwell I,* both parties agreed the '098 patent claimed a cold-wall process, but disputed the scope of this claim. *See Rockwell I,* 37 Fed.Cl. at 490. While Rockwell proffered a broader interpretation of key '098 patent claims, its readings do not match up with the minimally descriptive language SDL used in its advertisements.[3] *See id.*

Third, the preamble to the '098 patent illustrates that Rockwell did not claim all MOCVD technology. In fact, it claims a specific MOCVD process requiring "a reaction chamber with only one high temperature zone." Shatzer Dec., Exh. 9 at 7. The preamble alone is legally insufficient to determine the meaning of actual claims. *See Bell Communications Research Inc. v. Vitalink Communications Corp.,* 55 F.3d 615, 620–21 (Fed.Cir.1995). However, it may evince what the inventor intended to claim in the patent. *See id.* None of SDL's advertisements or correspondence is sufficiently detailed to afford Rockwell any indication that SDL was also using reactors that had only one elevated temperature zone. For example, in an October 1987 letter, SDL stated it uses a hot-wall process but does not explain how or why it reached that conclusion. *See* Scifres Dec., Exh. D.

---

3. SDL's argument that Rockwell thought its MOCVD covered a broader swath is not totally without merit. In *Rockwell I,* Rockwell interpreted one of its '098 claims as comprising both hot- and cold-wall processes. *See Rockwell I,* 37 Fed.Cl. at 488. SDL wrote a letter on October 16, 1987 to Rockwell disclosing SDL's use of a hot-wall process. However, the weight of the facts on record suggest Rockwell claimed a more narrow MOCVD technology during the relevant time period than SDL suggests.

Fourth, the correspondence on record eschews SDL's argument that Rockwell understood the '098 patent so expansively as to include any MOCVD process. In July of 1987, Rockwell wrote "[w]e believe the patents cover *a basic* MOCVD process." Scifres Dec., Exh. C (emphasis added). SDL seems to misapprehend the function of the indefinite article "a" in this statement. It does not mean "any"—the colloquial equivalent of "all"—as SDL suggests. Indeed, the author states this process "would be of interest to *any* company . . . using . . . MOCVD technology." *Id.* (emphasis added). This statement does not suggest that Rockwell believed all companies using any MOCVD technology infringed its patent. At the very least, this is the appropriate inference the court should draw on summary judgment. *See T.W. Elec. Serv.*, 809 F.2d at 631 (holding inferences to be drawn from the facts must be viewed in a light most favorable to the party opposing the motion).

### iii. *SDL's Inapposite Case Law*

The court has already found Rockwell's correspondence does not evince actual knowledge. SDL misreads case law to suggest a contrary conclusion. First, SDL misses the mark in its interpretation of *Intertech Licensing Corp. v. Brown & Sharpe Manufacturing Co.*, 708 F.Supp. 1423 (D.Del.1989).[4] The *Intertech* court relied on a "long line of correspondence" in starting the laches clock no later than

three years *after* the plaintiff in that case wrote the letter to which SDL directs this court's attention. *Id.* at 1435, 1425–30. That letter "perhaps hinted" infringement. *Id.* at 1425. Unlike the present dispute, subsequent correspondence in *Intertech* "forcefully accus[ed]" defendant of infringing plaintiff's patents. *Id.* at 1426. Rockwell made no such accusation.

SDL's reliance on *Naxon Telesign Corp. v. Bunker Ramo Corp.*, 686 F.2d 1258 (7th Cir.1982), to support the proposition that Rockwell's 1985 letter triggers the laches presumption is equally tenuous. Unlike the present case, in that case the evidence showed plaintiff had actual knowledge of infringement three years before it wrote any letter to defendant, triggering the laches clock at that time.[5] *See Naxon Telesign Corp. v. Bunker Ramo Corp.*, 517 F.Supp. 804, 806 (N.D.Ill.1981). Moreover, unlike Rockwell's letter, the letter in that case provided a formal notice to defendants of claimed infringement.[6]

The court concludes Rockwell's 1985 letter is insufficient to trigger the laches clock. Rockwell's other letters during the relevant time period are substantially similar to the 1985 letter and the court reaches the same conclusion with regard to that correspondence for the same reasons. SDL has therefore failed to satisfy its burden on summary judgment. SDL has failed to show that no genuine issue of material fact exists with regard Rockwell's

---

**4.** *Intertech* did consider defendant's laches defense on summary judgment but had the benefit of considering the evidence after a bench trial. *See Intertech,* 708 F.Supp. at 1432.

**5.** *See Naxon Telesign Corp. v. Bunker Ramo Corp.,* 517 F.Supp. 804, 807 (N.D.Ill.1981) (finding laches clock started three years *before* any correspondence between parties because plaintiff patentee stated in deposition that he agreed with his patent counsel that defendant's device—a message sign, not a process—infringed plaintiff's patent), *aff'd,* 686 F.2d 1258, 1264 (7th Cir.1982) (noting the district court did not address how laches applied to the facts of the case). The Seventh Circuit did not make clear the reason why it decided to footnote the "formal notice" rule SDL quotes at page 12 of its reply memoran-

dum. The first written notice of any kind in that case fell *within* six years before plaintiffs initiated litigation; but the appeals court's laches analysis depended on the six-year presumption, and the only evidence showing any knowledge of infringement before that time was not a notice of infringement but a deposition showing actual knowledge. *See Naxon Telesign Corp. v. Bunker Ramo Corp.,* 686 F.2d 1258, 1265, 1265 n. 14 (7th Cir.1982).

**6.** Neither the district court nor the appeals court fully describes the content of that letter. *See Naxon,* 686 F.2d at 1265 (providing minimalist description of the letter as a "formal notice"); *cf. Naxon,* 517 F.Supp. at 807 (describing the letter as a "notice[ ] of claimed infringement"). The court finds Rockwell's 1985 letter fits neither description.

actual knowledge during the crucial time. *See Celotex Corp.*, 477 U.S. at 324, 106 S.Ct. 2548.

### B. *Constructive Knowledge*

Courts impose a duty on patentees to police their rights. *See Wanlass v. General Elec. Co.*, 148 F.3d 1334, 1338 (Fed.Cir. 1998). The case law charges plaintiff with such knowledge as it might have obtained on reasonable, diligent inquiry. *See id.; see also Potash Co. of Am. v. International Minerals & Chem. Corp.*, 213 F.2d 153, 155 (10th Cir.1954) (finding "the means of knowledge are generally equivalent to actual knowledge" where patentee fails to make a diligent inquiry). However, the six-year presumption does not apply if there are genuine issues of material facts as to whether Rockwell should have known of infringement before the crucial date in May 1989. *See Wanlass v. Fedders Corp.*, 145 F.3d 1461, 1464 (Fed.Cir.1998); *Aukerman*, 960 F.2d at 1038.

### i. *Diligent Inquiry Duty*

■ The court finds Rockwell discharged its responsibility to be diligent and undertake an inquiry. *See Potash*, 213 F.2d at 155. There is no dispute that, shortly after SDL began advertising its use of an "[a]dvanced MOCVD" process, Rockwell began inquiring whether infringement appertained.[7] Evans Dec., Exh. AA. As set forth above, between January 1985 and May 1989, Rockwell and SDL exchanged correspondence in which Rockwell attempted to discern in greater detail the nature of SDL's MOCVD pro-

cess. *See* Scifres Dec., Exhs. A–E. SDL consistently stated it did not infringe.[8] *See id.*

Rockwell did not sleep on its rights. Rockwell was less persistent than patentees in other cases who discharged their inquiry duty. *See, e.g., Fromson v. Citiplate,* 699 F.Supp. 398, 402–3 (E.D.N.Y. 1988) (finding plaintiff fulfilled its duty in frequently writing and telephoning defendant to ascertain additional information). However, Rockwell was more diligent than the plaintiff in *Hemstreet v. Computer Entry Sys. Corp.*, 741 F.Supp. 1308 (N.D.Ill. 1990), *rev'd on other grounds,* 972 F.2d 1290 (Fed.Cir.1992). SDL relies on that case to suggest Rockwell failed to undertake a reasonable inquiry during the relevant time period. There, plaintiff wrote one letter, never followed up and remained silent for over six years. *See Hemstreet,* 972 F.2d at 1292. SDL ignores Rockwell's additional correspondence and ignores the fact that Rockwell only resorted to litigation after it became convinced that compulsory discovery was the only way it could determine whether SDL infringed. If this conclusion is not explicit on the face of the relevant correspondence, it is at least a reasonable inference the court must draw in favor of Rockwell on summary judgment.

### ii. *Relevance of Undiscovered Materials*

The court finds a more diligent inquiry on Rockwell's part would have uncovered additional relevant information. There is

---

**7.** SDL argues Rockwell was aware of advertisements prior to this date. SDL hired an employee to develop a marketing campaign for relevant SDL products in May 1984. *See* Dec. Evans ¶¶ 1, 2. June 1984 is the earliest date SDL has specified it made information available to the public about its products. *See id.* ¶ 4. SDL was a new company at that time and it would take time for other companies to become aware of its existence and products. SDL only could have released advertisements some time after May 1984. Therefore, the court rejects SDL's desire to start the constructive knowledge analysis before Rockwell's January 1985 letter.

**8.** The court disagrees with plaintiff Rockwell's assertion that SDL "lied" to Rockwell in stating SDL's process did not infringe. Because of the factual complexity underlying the patent-in-suit in this case, it has taken many years to determine whether SDL's process infringed. There is no evidence on record that SDL believed it was infringing. Accordingly, plaintiff's reliance on *Chubb Integrated Sys. v. National Bank of Washington,* 658 F.Supp. 1043, 1050 (D.D.C.1987), for the proposition that dirty hands precludes SDL from raising laches is not well taken.

ample evidence on record showing advertisements, product data sheets, and other technical materials were publicly available. *See* Evans Dec. at 2–6. The court accordingly finds these materials were within Rockwell's "means" and are therefore "equivalent to actual knowledge." *Potash*, 213 F.2d at 155.

However, another shoe must drop before the court will find these materials sufficient to establish Rockwell "should have known" of infringement during the relevant time period. Case law and common sense suggest that SDL's additional publicly-available materials must go to the patent at issue and at least suggest infringement. *See, e.g., Wanlass v. Fedders*, 145 F.3d at 1464 (overturning summary judgment on laches because genuine issues of material fact existed with regard to whether patentee "reasonably should have known ... of [defendant's] allegedly infringing activity"); *Soot v. General Elec. Co.*, 681 F.Supp. 157, 166 (S.D.N.Y.1987) (charging patentee "with knowledge of facts constituting infringement"); *Potash*, 213 F.2d at 155 (charging patentee with "facts which create [patentee's] right or cause of action").

SDL's additional public materials are not analogous to the public materials in other cases where courts have found constructive knowledge sufficient to trigger the laches clock. In *Wanlass v. General Electric Co.*, the court imputed constructive knowledge where defendant's "notorious sale of easily testable products gave [patentee] the opportunity to discover the alleged infringement earlier." 148 F.3d at 1338. Likewise, the patent at issue in *Hall v. Aqua Queen Mfg., Inc.*, 93 F.3d 1548 (Fed.Cir.1996), involved an easily testable product, a waterbed. There, the Federal Circuit upheld the district court's decision to apply the six-year presumption because "comparably conclusive evidence

[showed] that [patentee] should have known of the accused infringer's open, notorious, and allegedly infringing activities more than six years prior to filing suit." *Id.* at 1553. Defendant SDL's MOCVD process was neither easily testable nor advertised with sufficient detail to suggest infringement to a reasonable patentee.

At most, the court finds SDL's additional public materials constituted "circumstances" that would give a reasonable patentee cause to inquire into allegedly infringing activities. *See Wanlass v. General Elec. Co.*, 148 F.3d at 1337. None of the advertisements or other public information which Rockwell could have obtained is materially different from the information Rockwell did acquire. In fact, most of the pertinent language is nearly identical.[9] *See* Evans Dec., Exhs. A–U.

■ Accordingly, the court finds SDL has failed to show the absence of genuine issues of material fact with regard to whether Rockwell knew or should have known before May 22, 1985 of infringement. This six-year presumption is particularly unripe for adjudication because the parties have not been permitted discovery on laches. *See* Shatzer Dec. ¶ 5.

## II. *Reasonableness of Rockwell's Delay*

■ Defendant SDL fails to show the absence of genuine issues of material fact regarding the six-year presumption. SDL may still prevail on the laches defense based on the "totality of the evidence presented." *Aukerman*, 960 F.2d at 1038. However, even if SDL had been able to meet the presumption and shift the burden of production to Rockwell, SDL still would not prevail on the laches defense. The court finds Rockwell has submitted sufficient evidence both to eliminate the laches presumption of unreasonableness and suf-

9. SDL directs the court's attention to simple schema of an MOCVD reactor SDL published during the relevant time period. *See* Evans. Dec., Exh. Y. SDL's expert claims this schema would allow one skilled in the art to infer infringement. *See* Stringfellow Dec. ¶ 5.

SDL's expert conclusion, however, does not put this fact beyond dispute. Drawing all reasonable inferences in favor of non-movant, the court does not believe this factual assertion ripe for adjudication on summary judgment.

ficient to place the reasonableness of Rockwell's delay in genuine dispute. *See id.* 960 F.2d 1037–38.

The *Aukerman* court set forth a list of non-exhaustive excuses for delay. *See Aukerman,* 960 F.2d at 1033. Plaintiff Rockwell claims two of these prevented it from filing suit earlier: it was engaged in other litigation; and the extent of SDL's infringement was minimal compared to other companies Rockwell sought to license.

### A. *Other Litigation*

*Aukerman* has recognized other litigation involving the patent at issue excuses delay in some instances. *See id.* (citing *Jamesbury,* 839 F.2d at 1552–53).

There is no dispute that Rockwell was litigating the '098 patent in the Claims Court from August 1993 to the date of filing this action in May 1995. SDL asserts this excuse is unavailable to Rockwell because it never received explicit notice that Rockwell intended to sue SDL.[10] SDL's argument fails for two reasons. The facts of this case show that SDL received notice of Rockwell's litigation of the '098 patent pursuant to 41 U.S.C. section 114(b). *See* Shatzer Dec., Exh. 6. Moreover, that notice enclosed a copy of the complaint in which Rockwell explicitly named SDL as one agent which the United States caused to infringe the '098 patent. *See id.,* Exh. 5, ¶¶ 13, 14.

■ The court agrees with defendant that *Jamesbury* can be read to require Rockwell to give explicit notice, not only of other litigation concerning the '098 patent in which Rockwell names SDL, but also notice of Rockwell's express intent to sue SDL once that litigation ended. *See Jamesbury,* 839 F.2d at 1553. However, this court finds more recent and better reasoned cases support the opposite conclusion. The *Aukerman* court stated

"[t]he equities may or may not require that the plaintiff communicate its reasons for delay to the defendant." *Aukerman,* 960 F.2d at 1033 (citing Chisum § 19.05[2][b] ). As plaintiff notes, *Hemstreet* also supports "restor[ing] equitable flexibility" in determining whether the facts of the case require plaintiff to notify SDL of its intent to sue SDL. *See Hemstreet,* 972 F.2d at 1293. This flexible approach is superior because it is more consistent with the foundations of the laches defense. *See Aukerman,* 960 F.2d at 1032 ("With its origins in equity, a determination of laches is not made upon the application of 'mechanical rules.' ") (citations omitted). The facts of this case do not require such explicit notice as SDL would require: SDL was both informed of the other litigation, and informed that it was named in that action.

### B. *Rockwell's Licensing Program*

Courts have recognized a patentee may have a valid excuse for delaying litigation where it was "busy enforcing its rights elsewhere." *Hemstreet,* 972 F.2d at 1293 (finding summary judgment on laches inappropriate where plaintiff delayed suit against defendant for thirteen years while enforcing its patent against other parties).

Rockwell essentially argues it did not initiate litigation against SDL at an earlier time because it was too busy enforcing its patent rights against larger manufacturers. *See* Hamman Dec. ¶¶ 3–4. Rockwell has submitted evidence showing that it did indeed pursue an active licensing campaign focused on larger companies for at least three years. *See* Davey Dec. ¶ 5. SDL asserts other evidence illustrates Rockwell did not focus exclusively on lower-production companies. *See, e.g.,* Confidential Supp. Pernick Dec., Exh. 18 at Bates RP 003829. SDL merely disputes and offers a different interpretation of the evidence

---

10. SDL also argues Rockwell's "other litigation" excuse does not apply because the litigation did not occur between May 1985 and 1989. SDL hinges this entire argument on the assertion that Rockwell knew or should

have known no later than May 1985 of SDL's infringing activities. The court has already determined that this argument is unsound in finding the six-year presumption inapplicable.

Rockwell has submitted. At most, SDL demonstrates a genuine issue of material fact exists as to whether Rockwell's excuse is valid. Summary judgment is therefore inappropriate on this matter. *See T.W. Elec. Serv.*, 809 F.2d at 631.

*CONCLUSION*

Because genuine issues of material fact exist as to whether Rockwell knew or should have known within the crucial time of infringement, the court finds the six-year presumption of laches does not apply. Even if the presumption did apply, the court finds Rockwell has submitted enough evidence to defeat it and to place the issue of reasonableness of delay in genuine dispute. Accordingly, SDL's motion for summary judgment on laches is DENIED.